**NORTHWEST AIRLINES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip. Op. 98–114.
Court No. 94–08–00485.

United States Court of
International Trade.

Aug. 5, 1998.

Zuckert, Scoutt & Rasenberger, L.L.P., Washington, DC (Frank J. Costello and Malcolm L. Benge), for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–in–Charge, New York City, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Aimee Lee, New York City, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Joseph Spraragen), of counsel, for Defendant.

## OPINION

GOLDBERG, Judge.

Plaintiff importer, Northwest Airlines, Inc. ("Northwest"), challenges how the United States Customs Service ("Customs") classified the Brake and Steering Control Unit ("BSCU"), of the Airbus Industrie A320 aircraft that Northwest imported from France. Northwest argues that the BSCU is properly classified under the Harmonized Tariff Schedule of the United States ("HTSUS") subheading 9014.20.60 as a navigational or aeronautical instrument or appliance;

9031.90 as a measuring or checking instrument; or 8803.30.10 as a part for use in civil aircraft. Under any of Northwest's proposed classifications, the BSCU would be entitled to enter the United States duty free. Customs rejected Northwest's proposed classification, concluding instead that the BSCU should be classified under HTSUS subheading 8537.10.00 as a programmable controller and, therefore, subject to a 5.3% *ad valorem* duty.

Northwest timely filed a protest with Customs on August 8, 1990, and, when Customs denied the protest, Northwest commenced suit in the Court.

The Court exercises jurisdiction in this matter under 28 U.S.C. § 1581(a). The Court finds for defendant.

## I.

### BACKGROUND

The merchandise at issue is the Braking and Steering Control Unit of the Airbus Industrie A320 aircraft ("A320"). Northwest imported the BSCU as a spare part for installation in jet aircraft. Each A320 aircraft contains one BSCU. A BSCU is comprised of computer cards, electronic circuits and wires, and various metal components. *See* Pl.'s Mem. In Supp. Mtn. S.J., ("Pl.'s Mem."), at Ex. B (BSCU Maintenance Manual). The BSCU only operates in conjunction with the A320. *See* Pl.'s Mem., at Ex. A (Nietzel Decl. ¶ 22). The BSCU uses digital technology to control the braking of the four main wheels of the A320; the BSCU also steers the aircraft's nosewheel using digital technology. *See* Pl.'s Mem., at Ex. B (BSCU Maintenance Manual). More specifically, the BSCU has three functions: (i) during landing, and in aborted take-off, the BSCU assists in braking the A320; (ii) once landing is complete, it assists in steering the aircraft; and (iii) during descent, landing, take-off, and taxiing, it monitors the A320's braking and steering systems. *See* Pl.'s Mem., at Ex. A (Nietzel Decl. ¶ 7).

In April 1990, Northwest imported a BSCU from Airbus of France, the manufacturer. Subsequently, Northwest purchased four more BSCUs that are also the subject of

this action. Customs classified each BSCU under HTSUS subheading 8537.10.00, dutiable at a rate of 5.3% *ad valorem.* Northwest timely protested this classification of the BSCU, asserting that it was erroneous and that the BSCU should be entered duty-free. Northwest offers three alternative classification arguments to support its claim of duty-free treatment: (i) the BSCU is navigational equipment under HTSUS subheading 901; (ii) the BSCU is measuring equipment under HTSUS subheading 9031; or (iii) the BSCU is a civil aircraft part under HTSUS subheading 8803. Under any one of the classifications proposed by Northwest, the BSCU would enter duty free pursuant to the Agreement on Trade in Civil Agreement. Customs' classification would impose a 5.3% *ad valorem* tariff.

Customs disagrees with Northwest's proposal that the BSCU enter duty free either because of the Agreement on Trade in Civil Aircraft or because no duty is provided under HTSUS subheading 9031. Customs asserts that classification of the BSCU under HTSUS subheading 8537.10.00 is correct. Customs rejects the notion that the BSCU can be classified under HTSUS subheading 9014 or 9031 because the respective HTSUS section descriptions do not apply to the BSCU. Customs further asserts that the Agreement on Trade In Civil Aircraft, as implemented through the HTSUS, does not grant the unit duty-free status.

Because the Court concludes that the BSCU is not navigational equipment, a measuring device, or a civil aircraft part subject to ATCA provisions, we find that Customs properly classified the BSCU as a programmable controller. Consequently, the Court finds in favor of Customs.

## II.

### *STANDARD OF REVIEW*

 The factual portion of a Customs' classification decision enjoys a statutory presumption of correctness; the importer plaintiff has the burden of proving otherwise. 28 U.S.C. § 2639(a)(1) (1994); *Anhydrides & Chems., Inc. v. United States,* —— Fed. Cir. (T) ——, ——, 130 F.3d 1481, 1485–86 (1997);

*Goodman Mfg., L.P. v. United States,* —— Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995) (statutory presumption of correctness is limited to factual determinations). Pursuant to 28 U.S.C. § 2640(a), the Court reviews Customs' classification decision *de novo.* When it reviews classification decisions, the Court has a statutory duty to find the correct result. 28 U.S.C. § 2643(b); *Rollerblade, Inc. v. United States,* —— Fed. Cir. (T) ——, ——, 112 F.3d 481, 484 (1997). In making this determination, the Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). Because the parties do not dispute Customs' factual findings here, the presumption of correctness is not relevant. This case is reviewed *de novo.*

## III.

### *DISCUSSION*

#### A.

This case requires the Court to determine the correct HTSUS provision for classification of the BSCU. The Court finds that Customs correctly classified the merchandise under HTSUS subheading 8537.10.00.

Under the General Rules for Interpretation of the HTSUS, the classification of a given entry "shall be determined according to the terms of the headings and any relative section or chapter notes." General Rules for the Interpretation of the Harmonized System, R. 1. In addition, the Court may refer to Explanatory Notes for assistance in interpreting the HTSUS; the Explanatory Notes "are intended to clarify the scope of the HTSUS and to offer guidance in interpreting subheadings." *Mita Copystar America v. United States,* —— Fed. Cir.(T) ——, ——, 21 F.3d 1079, 1082 (1994)(citing *Lynteq v. United States,* 976 F.2d 693, 699 (1992)). We now review Customs' classification decision with respect to the BSCU in light of the above guidelines.

 The Court concludes that Customs correctly classified the BSCU under HTSUS subheading 8537.10.00 in accordance with the terms of the heading and the subheading, as

well as the applicable Explanatory Notes. To begin, the HTSUS Chapter 85 heading reads in relevant part as follows: "[e]lectrical machinery and equipment and parts thereof;. . . ." Moving on, HTSUS subheading 8537 specifically includes "[b]oards, panels, . . . consoles, desks, cabinets, and other bases equipped with two or more apparatus of heading No. 85.35 or 85.36, for electric control or the distribution of electricity. . . ." More specifically, Explanatory Note 3 for subheading 8537 indicates that this subheading 8537 covers "programmable controllers." Programmable controllers are digital apparatus that use a programmable memory to store instructions for implementing specific functions such as "logic, sequencing, timing, counting and arithmetic, to control, through digital or analog input/output modules, various types of machines." HTSUS, Section VI 85.37, Explanatory Note, (3) (1990).

Here, the BSCU is clearly electrical machinery and, thus, falls within the parameters of HTSUS Chapter 85. Importantly, the BSCU also is a "programmable controller" within the meaning of HTSUS subheading 8537. The BSCU electronically signals the servovalves for each wheel, and pilot commands are transmitted electronically from the cockpit to the BSCU. *See* Pl.'s Mem., at Ex. A (Nietzel Decl. ¶¶ 7, 13). Electronic sensors attached to the brakes and nosewheel steering system collect data and send it back to the BSCU. From this, the BSCU compares the data it receives from the sensors and other A320 computers against performance parameters programmed into its memory by the manufacturer. *See* Pl.'s Mem., at Ex. A (Nietzel ¶¶ 11, 14). The BSCU then responds by issuing instructions to hydraulic units that manipulate the aircraft's brakes or turn the nosewheel. *See* Pl.'s Mem., at Ex. A (Nietzel ¶ 12). The BSCU is preprogrammed by the manufacturer to compare and respond to data, and to control the brakes and nosewheel steering accordingly. Because the BSCU stores, processes, and implements instructions, the Court finds that the BSCU is a programmable controller as described by the terms and applicable Notes to HTSUS subheading 8537.

Thus, the Court concludes that the merchandise is correctly classified under 8537.10.00. The Court now reviews the plaintiff's alternative classification arguments to assess whether any of them better describes the BSCU.

**B.**

■ Plaintiff first claims that the BSCU should be classified under HTSUS 9014.20.60 as a navigational or aeronautical instrument or appliance. To determine the common meaning of a tariff term, the Court may rely on dictionaries and scientific authorities. *See, e.g., Lynteq,* 976 F.2d at 697. In addition, the Court may refer to relevant industry usage of a term for interpretive assistance. *See, e.g., E. Dillingham, Inc. v. United States,* 61 C.C.P.A. 34, 36, 490 F.2d 967, 969 (1974). After reviewing these classification aids and comparing them to the relevant terms of chapter 90, the Court finds Northwest's argument unpersuasive.

■ The terms of HTSUS heading 9014.20.60 are not applicable to the BSCU. HTSUS subheading 9014.20.60 encompasses electrical "instruments or appliances for aeronautical or space navigation." Neither "navigational" nor "aeronautical" accurately describes the BSCU. First, the Federal Aviation Administration defines "navigational aid" as, "any visual or electronic device airborne or on the surface which provides point-to-point guidance information or position data to aircraft *in flight.*" Def.'s Cross Mtn. In Supp. S.J. ("Def.'s Mem."), at Ex. 3 (Rachiele Decl. ¶ 5, quoting FAA Aeronautical Informational Manual, N–1) (emphasis added). The BSCU does not navigate as explained by the above terms but, instead, merely steers the aircraft after it has landed. Pl.'s Mem., at Ex. A (Nietzel Decl. ¶ 7). The only guidance information the BSCU provides occurs while the plane is on the ground and, hence, it cannot be considered navigational for purposes of HTSUS subheading 9014.

Second, the term "aeronautical" is defined as relating to aeronautics, which in turn is defined as the "art or practice of sailing through the air." *Webster's Third New Int'l Dictionary* 34 (1993). Again, the BSCU con-

trols the aircraft steering once the aircraft is on the ground; therefore, the BSCU is not an instrument for aeronautical navigation.

■ It is also well established that the Court may use the manufacturer's view of the merchandise to determine a tariff classification. *Schott Optical Glass, Inc. v. United States,* 7 Fed. Cir. (T) 30, 33, 862 F.2d 866, 868 (1988). And, the Court may consider marketing literature as well as operations and service manuals to ascertain the manufacturer's view. *See Schott,* 7 Fed. Cir. (T) at 33, 862 F.2d at 868; *NEC America, Inc. v. United States,* 8 CIT 184, 190, 596 F.Supp. 466, 470, (1984), *aff'd,* 3 Fed. Cir. (T) 148, 760 F.2d 1295 (1985). Importantly here, Airbus' "Technical Definition" of the A320 describes the BSCU as landing gear, not as navigational equipment. Indeed, "Landing Gear" appears at the top of each page in this manual, and the relevant BSCU subheadings are titled "Wheel Brake System" and "Nosewheel Steering," respectively. *See* Def.'s Mem., at Ex. 1 (A320 Technical Definition).

In addition, the BSCU is not considered to be either navigational or aeronautical equipment in the aviation industry. The Master Minimum Equipment List ("MMEL"), a list developed by the FAA with participation by the aviation industry, including Airbus, classifies the BSCU as landing gear rather than navigational equipment. *See* Def.'s Mem., at Ex. 3 (Rachiele Decl. ¶ 6, referencing MMEL System No. 32). The aforementioned sources indicate that the BSCU is not a navigational device.

Plaintiff nevertheless contends that the BSCU is similar to other Airbus parts that have been previously classified under HTSUS subheading 9014.20.60. The Court, however, finds that the BSCU is easily distinguishable from other Airbus parts that fall under HTSUS subheading 9014.20.60. Plaintiff asserts that the BSCU, like the slat/flap control computer ("SFCC"), should be classified under 9014. Unlike the BSCU, however, the SFCC sets and monitors the slats and flaps of the aircraft, which in turn determines the plane's proper rate of ascent and descent. *See* HQ 087979, at 3 (Feb. 3, 1992). The SFCC, therefore, is integral to the plane's course or position. Customs specifi-

cally recognized this aspect of the SFCC in its classification ruling, noting that "devices that primarily control a plane's horizontal movements and have the capacity to correct a deviation if the aircraft is flying at a wrong angle, have been regarded as navigational instruments under the TSUS. . . ." HQ 087979, at 3. In contrast to the SFCC, the BSCU does not relate to either the course or the position of the aircraft during flight. As such, the principles guiding classification of the SFCC under HTSUS subheading 9014 do not apply to the BSCU's classification.

Similarly, the Court finds unpersuasive plaintiff's next attempt to draw parallels between the previous classification of another Airbus part, the spoiler and elevator control computer ("SEC"), under HTSUS subheading 9014, and the BSCU's classification. The SEC sets, adjusts, and monitors spoilers and elevators on the Airbus A320. *See* HQ 953462 (Apr. 21, 1993). Spoilers are flaps on each wing that function as brakes to slow the aircraft for landing, while elevators are flaps that control the pitch of the aircraft. *See id.* at 1. Importantly, both of these functions occur during the flight of the aircraft. Because the device controls pitch and rate of descent, it is not surprising that Customs found the SEC relates to the plane's course or position. Accordingly, Customs ruled that the SEC should be classified under HTSUS subheading 9014.20.60. *See id.* at 2. The BSCU functions, on the other hand, relate to braking and steering, and cannot be considered navigational functions that affect either the course or position of the aircraft in the air.

The Court, therefore, rejects plaintiff's argument that the BSCU falls under HTSUS subheading 9014.20.60.

## C.

■ Plaintiff next contends that the BSCU should have been classified under HTSUS subheading 9031 as a measuring instrument. The Court is not persuaded.

Northwest argues that an instrument should be classified under the HTSUS according to its primary function, design, or construction. *See Trans–Atlantic Co. v.*

*United States,* 60 C.C.P.A. 100, 103, 471 F.2d 1397, 1399 (1973). Because Northwest contends that the principle function of the BSCU is to monitor other instruments in the plane, it argues that duty-free status should be accorded under 9031. Duty-free entry is granted to parts and accessories falling under HTSUS subheading 9031.90, which includes, in relevant part, "parts and accessories" of "measuring or checking instruments, appliances and machines . . . ." The principal function of the BSCU, however, is to assist the pilot in braking and steering. Indeed, the A320 Maintenance Manual plainly states that "the [BSCU] [ ] controls the braking of the four main wheels and the nosewheel steering." Def.'s Mem., at Ex. 1 (BSCU Maintenance Manual). The name of the part, *"Braking* and *Steering* Control Unit," also unmistakably reflects that braking and steering are the device's main functions.

Plaintiff, nevertheless, asserts that the BSCU monitors the braking function as well as other parts, and, therefore, is a measuring or checking instrument as described under 9031. In particular, plaintiff points out that the BSCU measures the brake position during landing and take-off and reports that information to the pilot and other control systems. Pl.'s Mem., at Ex. A (Nietzel Decl. ¶¶ 14, 15). While the Court agrees that the BSCU performs some measuring and monitoring functions, these functions are secondary; measuring speed and other variables is part of the BSCU's braking and steering function. The BSCU must be classified according to its primary function of braking and steering.

Plaintiff further asserts that the BSCU should be classified under HTSUS subheading 9031 because Customs has previously granted similar parts duty-free entry under this tariff heading. The Court finds that plaintiff's examples of other parts classified under HTSUS subheading 9031 are distinguishable. First, plaintiff references two classification rulings, one involving a smoke detection control unit ("SDCU"), *see* HQ 957070 (Jan. 23, 1995), and one involving a system data acquisition concentrator ("SDAC"), *see* HQ 954175 (July 30, 1993). These two parts, though they receive signals

from other computers like the BSCU, perform *only* monitoring functions. Specifically, the SDCU processes signals received from smoke detectors and relays them to the cockpit. Importantly, it does not "take any independent action regarding the condition indicated by the smoke detectors." HQ 957070, at 2. Similarly, the SDAC, after receiving signals from peripheral computers, measures the indicated malfunction against programmed guidelines. Thus, the SDAC works primarily as a measuring device and, therefore, Customs classified it under HTSUS subheading 9031. *See* HQ 954175. Unlike the SDCU and the SDAC, the measuring function of the BSCU is secondary; therefore, it cannot be properly classified as a measuring device.

Northwest next proposes that because the BSCU is a device that *assists* in measuring, it should be classified under HTSUS subheading 9031.90 (Parts and Accessories). Specifically, Northwest asserts that the BSCU is akin to the flight data entry panel ("FDEP") and the display management computer ("DMC") that Customs previously classified under HTSUS subheading 9031.90. *See* HQ 952778 (Dec. 1, 1992)(FDEP classified under HTSUS subheading 9031.90.60 as an accessory to a measuring instrument); and HQ 954194 (June 7, 1993) (DMC classified under HTSUS subheading 9031.90.60 as an accessory to a measuring instrument). Again, the BSCU is distinguishable from these parts. The FDEP does not perform any independent measuring functions, but it does work in conjunction with the flight data acquisition unit ("FDAU"). *See* HQ 952778, at 1–2. Customs classified the FDAU as a measuring or checking device under HTSUS subheading 9031. *See* HQ 952768 (Nov. 4, 1992). As a result, Customs classified the FDEP as an accessory to a measuring device (*i.e.,* the FDAU). *See* HQ 952778, at 2. Similarly, the DMC performs no measuring function itself, and performs no other function than to display data from other measuring devices, such as the SDAC. *See* HQ 954194, at 2. Customs, therefore, classified the DMC as an accessory under HTSUS subheading 9031.90. *See* HQ 954194, at 2. In short, the sole function of the FDEP and the DMC is to assist in measuring, whereas the

BSCU is multi-tasked. That is, although the BSCU monitors speed and other variables, its primary functions are braking and steering. Thus, the BSCU, unlike the FDEP and the DMC, is not just an accessory to a measuring device, and, therefore, it cannot be classified under HTSUS subheading 9031.90.

### D.

■ Finally, plaintiff argues that pursuant to the Agreement on Trade in Civil Aircraft ("ATCA"), the BSCU should be entered duty free. More concretely, plaintiff maintains that the BSCU falls within HTSUS subheading 8803.30.10 as "other parts of airplanes or helicopters for use in civil aircraft" and that such a classification confers duty-free entry. The Court finds that this argument is without merit.

Title VI of the Trade Agreement Act of 1979 codified the ATCA, which entered into force with respect to the United States on January 1, 1980. Trade Agreements Act, Pub.L. No. 96–39, 93 Stat. 144 (1979). The ATCA, in relevant part, eliminates tariffs on aircraft parts under Article 2 of the Agreement:

*Article 2 Customs Duties and Other Charges*

2.1 Signatories agree:

2.1.1 to eliminate by January 1, 1980, or by the date of entry into force of this Agreement, all customs duties and other charges of any kind levied on, or in connection with, the importation of products classified for customs purposes under their respective tariff headings listed in the Annex, if such products are for use in civil aircraft and incorporation therein, in the course of its manufacture, repair, maintenance, rebuilding, modification or conversion;

ATCA, 31 U.S.T. 619, T.I.A.S. No. 9620 (footnote omitted). Article 9.4 of the ATCA declares that each signatory is responsible for implementing the appropriate domestic law in accordance with the Agreement. *See id.* The United States, as signatory, implemented the ATCA as part of the HTSUS as follows:

(c) *Products Eligible for Special Tariff Treatment.*

(i) (A) Programs under which special tariff treatment may be provided, and the corresponding symbols for such programs as they are indicated in the "Special" subcolumn, are as follows:

. . .

Agreement on Trade in Civil Aircraft . . . C

. . .

(iv). *Articles Eligible for Duty–Free Treatment Pursuant to the Agreement on Trade in Civil Aircraft.* Whenever a product is entered under a provision for which the rate of duty "Free (C)" appears in the "Special" subcolumn, the importer shall file a written statement, accompanied by such supporting documentation as the Secretary of the Treasury may require. . . .

General Note 3,(c)(i),(iv), HTSUS, (1990). (General Note 3).

(c)(iv) is now General Note 6, HTSUS. Hence, an imported part enters the United States duty free under the ATCA only if there is a "C" in the special subcolumn under the product listing.

There is no "C" in the special subcolumn that corresponds to subheading 8803.30.00. However, this is not the end of the matter. HTSUS subheading 8803 confers duty-free treatment to all parts of civil aircraft described in subheading 8802. *See* Section XVII, Chapter 88.03 Notes. HTSUS subheading 8802 in turn carries a special "C" designation and, in general, affords duty-free treatment for all aircraft. Standing alone, this would seem to be enough to confer duty-free treatment to the BSCU under 8803.30 as a part to an aircraft that falls under subheading 8802.

*Most importantly, however, there is a ca*veat in the relevant chapter notes that voids this simple equation. Specifically, in addition to being a part for a good that falls under subheading 8802, the chapter notes to subheading 8803 also require that the part "must not be excluded by the provisions of the Notes to Section XVII." Section XVII, Chap-

ter 88.03 Notes. In turn, the relevant note to Section XVII provides as follows:

> The expression "parts" and "parts and accessories" do not apply to the following articles, whether or not they are identifiable as parts of this Section: ...
>
> (f) Electrical machinery or equipment (Chapter 85)

Section XVII, Section Notes, 2(f), HTSUS (1990). As already established, the BSCU is properly classified as electrical machinery under Chapter 85. *See supra* Section III.A. Therefore, the relevant section and chapter notes to the HTSUS expressly preclude duty-free treatment for the BSCU under subheading 8803, as well as under the ATCA.

Notwithstanding the HTSUS special "C" designation, and section note 2(f), Northwest asserts that the ATCA applies to all aircraft parts, including the BSCU. This argument has no merit. To apply the ATCA in this manner would contradict the plain terms of the HTSUS. If this were the case, U.S. law, *i.e.*, the HTSUS, and the ATCA, would stand in conflict with one another. The following statute dictates that U.S. law, not the ATCA, governs the outcome of such a conflict:

> No provision of any trade agreement approved by Congress under section 2503(a) of this title, nor the application of any such provision to any person or circumstance which is in conflict with any statute of the United States shall be given effect under the laws of the United States.[1]

19 U.S.C. 2504(a). Even if U.S. law contradicts the agreement, U.S. law must be followed. *See, e.g., Suramerica de Aleaciones Laminadas, C.A. v. United States,* 10 Fed. Cir. (T) 74, 83, 966 F.2d 660, 667–68 (1992); *Algoma Steel Corp. v. United States,* 7 Fed. Cir. (T) 154, 156, 865 F.2d 240, 242 (1989). Northwest cannot apply the ATCA without reference to the relevant U.S. law. Consequently, the Court does not accept plaintiff's third alternative classification argument.

## V.

### *CONCLUSION*

For the foregoing reasons, the Court finds that Customs correctly classified the merchandise under HTSUS subheading 8537.10.00, and judgment will be entered accordingly.

## JUDGMENT

This case having been submitted for decision, and the Court, after consideration of all papers had herein, and upon due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:** that the classification of the subject merchandise by the United States Customs Service ("Customs") under subheading 8537.10.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") is correct; and it is further

**ORDERED, ADJUDGED,** and **DECREED:** that Customs shall liquidate the subject merchandise under subheading 8537.10.00 of the HTSUS, dutiable at a rate of 5.7 percent *ad valorem.* Judgment is hereby entered for defendant.

**SO ORDERED.**

---

1. The ATCA is part of section 2503(a) of title 19 of the United States Code.