Slip Op. 01-146

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

—————————————————————————

|   |   |   |
|---|---|---|
| UNITED TECHNOLOGIES CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| | : | |
| UNITED STATES, | : | Consolidated Court No. 96-02-00635 |
| | : | |
| Defendant. | : | |

—————————————————————————

[Plaintiff's motion for summary judgment denied and Defendant's cross-motion for summary judgment granted.]

Decided: December 13, 2001

*Phelan & Mitri* (*Michael F. Mitri*) for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Saul Davis*); *Beth C. Brotman*, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

## OPINION

This matter is before the Court on cross-motions for summary judgment pursuant to CIT Rule 56. At issue is whether Defendant, the United States Customs Service ("Customs"), was correct in denying duty-free treatment to certain entries of aircraft engine parts by Pratt & Whitney, a division of Plaintiff, United Technologies Corporation ("UTC"). UTC contends that the merchandise should have been afforded duty-free treatment pursuant to the Agreement on

Trade in Civil Aircraft, Apr. 12, 1979, 31 U.S.T. 619, T.I.A.S. No. 9620, a multilateral trade agreement codified under U.S. law as the Civil Aircraft Agreement, Title VI of the Trade Agreements Act of 1979, Pub. L. No. 96-39, § 601, 93 Stat. 144, 267 (1979). For the reasons that follow, the Court concludes that Customs was correct in denying duty-free treatment to the subject entries.[1] Therefore, UTC's motion is denied and Customs' motion is granted.

### *Jurisdiction and Standard of Review*

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CIT Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although 28 U.S.C. § 2639(a)(1) extends a presumption of correctness to Customs' classification decisions, this presumption "is irrelevant where there is no factual dispute between the parties." *Rollerblade Inc. v. United States*, 112 F.3d 481, 484 (Fed Cir. 1997) (citing *Goodman Manufacturing, L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995)); *accord Universal Electronics, Inc. v. United States*, 112 F.3d 488, 492-93 (Fed. Cir. 1997). Where, as here, Customs' decision is articulated in a classification ruling, the Court does not afford it the degree of deference set forth in *Chevron U.S.A. v. Natural Resources Defense Counsel*, 467 U.S. 837, 843-45 (1984). *United States v. Mead Corp.*, 533 U.S. ___ , 121 S. Ct.

---

[1] UTC avers that 51 entries are at issue in this action, but Customs contends that only 48 entries are at issue since, it alleges, entry no. 943-0231279-1 was liquidated free of duty; entry no. 943-0231954-9 was liquidated, as entered, under tariff subheading 7508.00.50; and entry no. 943-0230457-4 was entered under tariff subheading 8414.80.20. *See* Def.'s Resp. to Pl.'s Statement of Material Facts to Which There is No Genuine Dispute at ¶¶ 6, 8.

2164, 2175-76 (2001) (holding that classification rulings are "beyond the *Chevron* pale").

Instead, the Court gives the ruling respect "to the extent that [it has] the power to persuade."

*Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323

U.S. 134, 140 (1944)).  *See Mead, supra*, at 2175-76; *Heartland By-Products, Inc. v. United*

*States*, 264 F.3d 1126, 1134-35 (Fed. Cir. 2001).

### *Background*

UTC develops and manufactures jet engines and engine components for civilian and

military applications.  During the relevant time period, it was a party to several collaboration

agreements with foreign aerospace corporations.  In conjunction with those agreements, UTC

imported engine parts that were manufactured or supplied by foreign corporations "for use in the

development, manufacture, testing, repair, maintenance, rebuilding, modification and/or

conversion of engines and engine subassemblies in the United States."  Mem. of Law in Supp. of

Pl.'s Mot. for Summ. J. ("Pl.'s Br.") at 3.   The engine parts at issue in this action were imported

for use in either "commercial developmental or test engines" which were not installed on an

aircraft. *Id*. at 4.

UTC imported the subject merchandise between October 1991 and November 1995, and

asserted classification under subheading 8411.91.9080 of the Harmonized Tariff Schedule of the

United States ("HTSUS"), which provides for "[p]arts of aircraft turbines."  The general duty

rate for this subheading was 3.7% *ad valorem* from 1991 to 1994 and 3% *ad valorem* in 1995,

but duty-free entry was available for merchandise covered by the Agreement on Trade in Civil

Aircraft. HTSUS General Note 3(c)(iv) (1991)[2] explains the requirements for this provision:

> Articles Eligible for Duty-Free Treatment Pursuant to the Agreement on Trade in Civil Aircraft. Whenever a product is entered under a provision for which the rate of duty "Free (C)" appears in the "Special" subcolumn, the importer shall file a written statement, accompanied by such supporting documentation as the Secretary of the Treasury may require, with the appropriate customs officer stating that the imported article has been imported for use in civil aircraft, that it will be so used and that the article has been approved for such use by the Administrator of the Federal Aviation Authority (FAA) or by the airworthiness authority in the country of exportation, if such approval is recognized by the FAA as an acceptable substitute for FAA certification, or that an application for approval for such use has been submitted to, and accepted by, the Administrator of the FAA. For purposes of the tariff schedule, the term "civil aircraft" means all aircraft other than aircraft purchased for use by the Department of Defense or the United States Coast Guard.

UTC sought duty-free treatment as provided by General Note 3(c)(iv), but Customs denied this claim on the ground that the engine parts were "developmental material" to be used "for test engines only" and thus they were "not being used in [c]ivil [a]ircraft." Pl.'s Br. at 6. Customs classified the merchandise under HTSUS subheading 8411.91.9080 and assessed duties at the general rate. *Id*. at 6-7.

UTC timely filed a total of seven protests in conjunction with these entries, and also requested further administrative review from Customs Headquarters. In Headquarters Ruling ("HQ") 954058 (Apr. 14, 1995), Customs held that the parts were not "imported for use in civil aircraft nor so used in civil aircraft" because they "were installed in test engines which are fired and run in a test cell" and "usually are not placed in service on commercial aircraft." HQ

---

[2] In 1994 General Note 3(c)(iv) was renumbered General Note 6, but the wording remained the same. The Court will refer to it as General Note 3(c)(iv) throughout this Opinion.

954058 at 3.  Following this ruling, the seven protests were denied, and UTC brought the present action.

## *Discussion*

UTC contends that Customs used too narrow a definition of "aircraft" in determining that the imported engine parts did not qualify for duty-free treatment pursuant to General Note 3(c)(iv).  It argues that the Court should instead look to the Agreement on Trade in Civil Aircraft ("ATCA"), which provides that:

1.1  This Agreement applies to the following products:

*(a)* all civil aircraft,
*(b)* all civil aircraft engines and their parts and components,
*(c)* all other parts, components, and sub-assemblies of civil aircraft,
*(d)* all ground flight simulators and their parts and components,

whether used as original or replacement equipment in the manufacture,
repair, maintenance, rebuilding, modification or conversion of civil aircraft.

1.2  For the purposes of this Agreement "civil aircraft" means *(a)* all aircraft other than military aircraft and *(b)* all other products set out in Article 1.1 above.

ATCA articles 1.1, 1.2.  UTC explains that Customs' definition defeats the purpose of the ATCA, which was "to achieve maximum freedom of world trade in civil aircraft, parts, and related equipment, including the elimination of duties, and to the fullest extent possible, the reduction or elimination of trade restricting or distorting effects." *Id*. at 31 (citing ATCA preamble).  Thus it concludes that "the ATCA and its implementing U.S. legislation, the Civil

Aircraft Agreement, should be read to provide the greatest possible trade and commerce benefits to the international commercial aircraft industry."  Pl.'s Br. at 30-31.

"[T]ariff terms are to be construed in accordance with their common and popular meaning, in the absence of contrary legislative intent."  *E.M. Chemicals v. United States*, 920 F.2d 910, 913 (Fed. Cir. 1990) (citations omitted).  "To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources."  *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988) (citations omitted).  "Absent a clearly expressed legislative intention to the contrary, [the language of the statute] must ordinarily be regarded as conclusive."  *Consumer Product Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102, 108 (1980).

The Civil Aircraft Agreement, Pub. L. No. 96-39, § 601, 93 Stat. 144, 267, and HTSUS General Note 3(c)(iv), *supra*, define "civil aircraft" as "all aircraft other than aircraft purchased for use by the Department of Defense or the United States Coast Guard."  This definition distinguishes civil aircraft from military aircraft, but leaves the term "aircraft" undefined.  As UTC acknowledges in its brief, "the common meaning of 'aircraft' is . . . airplanes, helicopters and the like."  Pl.'s Br. at 28.  UTC also notes that Webster's Third New International Dictionary (1986) defines "aircraft" as "a weight-carrying machine or structure for flight in or navigation of the air that is designed to be supported by the air either by the buoyancy of the structure or by the dynamic action of the air against its surfaces – used of airplanes, balloons, helicopters, kites, kite balloons, orthopters, and gliders but chiefly of airplanes or aerostats."  *Id*. at 28 n.4.  Since

the engine parts at issue were not imported for installation on an aircraft, the Court concludes that Customs was correct in determining that engine parts were not imported for use in "aircraft" as that term is commonly understood.

Although, as UTC observes, the Civil Aircraft Agreement and HTSUS conflict with the ATCA to the extent they are narrower in scope, this court has previously held that "[e]ven if U.S. law contradicts the agreement, U.S. law must be followed." *Northwest Airlines, Inc. v. United States*, 22 C.I.T. 797, 805, 17 F. Supp. 2d 1008, 1015 (1998) (citing *Suramerica de Aleaciones Laminades, C.A. v. United States*, 966 F.2d 660, 667-68 (Fed Cir. 1992); *Algoma Steel Corp. v. United States*, 865 F.2d 240, 242 (Fed. Cir. 1989)). UTC also notes that the definition of "civil aircraft" in the HTSUS General Notes was amended in 1996 to encompass "any aircraft, aircraft engine, or ground flight simulator (including parts, components, and subassemblies thereof)." Pl.'s Br. at 33. UTC argues that "this Court should regard the weight of the statutory amendment as determinative of the construction of the HTSUS General Note [3(c)(iv)] term "civil aircraft" to include engine parts." *Id*. at 34. Nevertheless, the legislative history reflects that this amendment was made to "facilitate the importation of these products by *broadening* the definition of 'civil aircraft' in the [HTSUS]." S. Rep. No. 104-393 at 10 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4044, 4045 (emphasis added). Thus during 1991-1995, when the subject entries were made, the term "civil aircraft" was to be construed more narrowly, in accordance with its common meaning.

### *Conclusion*

For the foregoing reasons, UTC's motion for summary judgment is denied and Customs'

cross-motion for summary judgment is granted.  Judgment will enter accordingly.

_____
                    R. KENTON MUSGRAVE, JUDGE

Dated: December 13, 2001
       New York, New York