**Slip Op. 00-83**


UNITED STATES COURT OF INTERNATIONAL TRADE


|  |  |  |
|---|---|---|
| | : | |
| INTERNATIONAL TRADING CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: WALLACH, Judge |
| v. | : | Court No.: 97-09-01557 |
| | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

[Plaintiff's motion for summary judgment on claim for deemed liquidation GRANTED.]

Decided: July 14, 2000

Rode & Qualey (R. Brian Burke), for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; James A. Curley, Commercial Litigation Branch, Civil Division, Department of Justice; Edward N. Maurer, Office of the Assistant Chief Counsel, United States Customs Service, Joseph M. Spraragen and Stacy J. Ettinger, Office of the Assistant Chief Counsel for Import Administration, of counsel, for Defendant.

**OPINION**

**WALLACH, Judge.**


**I.**

**Preliminary Statement**

Plaintiff, International Trading Company, commenced this action to challenge the dumping margin applied by Customs in liquidating certain entries of its goods. Plaintiff contends the subject entries should have been deemed liquidated pursuant to 19 U.S.C. 1504(d) (as amended effective

Dec. 8, 1993) (hereinafter, "§ 1504(d) (1993)")[1] at the amount of duty deposited at the time of entry, rather than at the higher antidumping duty rate set by Commerce following its review. Plaintiff argues that deemed liquidation is required because Customs failed to liquidate the entries at issue within six months of the date on which Customs received notice of the removal of suspension of liquidation, and that notice was received on the date Commerce published the final results of its administrative review, or, in the alternative, when Commerce sent an e-mail to Customs informing it of the publication of the final results. Plaintiff's Moving Brief at 6-10. The United States asserts Customs did not receive notice within the meaning of § 1504(d) until Commerce issued liquidation instructions to Customs, which, according to Defendant, did not occur until August 29, 1996, less than two months prior to the date on which Customs actually liquidated the subject entries. Defendant's Opposition Brief at 8-10, 16. Because those liquidation instructions were issued fewer than six months prior to liquidation, Defendant says deemed liquidation is not required. Id. at 16.

The parties have cross-moved for summary judgment pursuant to USCIT Rule 56. The

---

[1]     This subsection was amended subsequent to 1993. However, both parties agree on the applicability of the 1993 amendments to these entries, which were made between March 1, 1993 and February 28, 1994. Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Moving Brief") at 11; Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgement [sic] ("Defendant's Opposition Brief") at 5. The version of § 1504(d) at issue here provides as follows:

> When a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, within 6 months after receiving notice of the removal from the Department of Commerce, other agency or a court with jurisdiction over the entry. Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d) (as amended effective December 8, 1993).

parties' motions present a single issue for resolution:  what action triggers the running of the time period during which Customs must liquidate or face deemed liquidation under 19 U.S.C. § 1504(d)?   Because Customs received notice within the meaning of § 1504(d) on February 13, 1996, when it received actual notice that the final results of the administrative review had been published, summary judgment is granted for Plaintiff.

This Court has jurisdiction pursuant to 28 U.S.C. 1581(a).

## II.

## Background

### *The Original Antidumping Order*

Plaintiff is one of several Bangladeshi manufacturers of shop towels who were named as respondents in an antidumping petition filed on March 29, 1991.  Commerce published an affirmative preliminary determination, triggering the statutory suspension of liquidation of Bangladeshi shop towel entries made on or after September 12, 1991.  *See Preliminary Determination of Sales at Less Than Fair Value:  Shop Towels From Bangladesh*, 56 Fed. Reg. 46411 (Dep't Comm., Sept. 12, 1991).  After investigation, Commerce calculated a final dumping margin for Plaintiff of 2.7% ad valorem.  *Final Determination of Sales at Less Than Fair Market Value: Shop Towels From Bangladesh*, 57 Fed. Reg. 3996 (Dep't Comm., Feb. 3, 1992).  Commerce published its antidumping order on March 20, 1992, *see Antidumping Duty Order:  Shop Towels From Bangladesh,* 57 Fed. Reg. 9688 (Dep't Comm., Mar. 20, 1992) (the "initial order"), and this became the deposit rate for entries of shop towels manufactured by Plaintiff.

This rate continued in force until September 21, 1995, when Commerce published the final

3

results of the first administrative review of the initial order. Following this review, Commerce increased the deposit rate on Plaintiff's shop towel entries from 2.72% to 8.3%. *See Shop Towels From Bangladesh: Final Results of Antidumping Duty Administrative Review*, 60 Fed. Reg. 48966 (Dep't Comm., Sept. 21, 1995).

### *The Second Administrative Review*

Commerce initiated a second administrative review, which includes all entries that are the subject of this action,[2] by notice published in the Federal Register on April 15, 1994. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 59 Fed Reg. 18099 (Dep't Comm., Apr. 15, 1994).

### *The August 1994 E-mail*

Although the second review had not been completed, Commerce sent Customs an e-mail on August 16, 1994, entitled "Non-Administrative Review Liquidation Instructions" (the "8/94 e-mail"), which related to Bangladeshi shop towel entries filed during the second review period, and directed Customs to "liquidate all entries for all firms" at the cash deposit or bonding rate required at the time of entry. The 8/94 e-mail also stated that "this telex constitutes the immediate lifting of suspension of liquidation of entries for the [subject] merchandise." These instructions were improperly issued, because the administrative review was not yet complete and the Final Results had not been issued. Commerce did not rescind them, nor did it notify Customs that the instructions were erroneous, but Customs did not liquidate Plaintiff's entries in response to the 8/94 e-mail. This e-mail stated that there were no restrictions on the release of its contents to the public.

---

[2] The entries which are the subject of this action were filed between March 1, 1993 and February 28, 1994 (the "second review period").

4

### *February 12, 1996 Publication of the Final Results*
### *of the Second Administrative Review*

On February 12, 1996, Commerce published the final results of its second administrative review in the Federal Register. *Shop Towels From Bangladesh; Final Results of Antidumping Duty Administrative Review*, 61 Fed. Reg. 5377 (Dep't Comm., Feb. 12, 1996) (the "*Final Results*"). In these *Final Results*, Commerce assigned Plaintiff a margin of 42.31%.[3]

### *The February 13, 1996 E-mail*

On February 13, 1996, the day after it published the *Final Results*, Commerce sent an e-mail (the "2/96 e-mail") to Customs, notifying it that the second review had been completed and referencing the Federal Register notice. However, this e-mail stated: "Do not liquidate any entries covered by this review until you have received liquidation instructions." The 2/96 e-mail stated that there were no restrictions on public release of its contents.

### *The August 29, 1996 E-mail*

On August 29, 1996, Commerce sent another e-mail (the "8/96 e-mail") to Customs, instructing Customs to liquidate Plaintiff's entries at the dumping margin specified in the *Final Results*. This e-mail indicated that it was not for public disclosure.

---

[3] During the second administrative review, Plaintiff submitted its response to the review questionnaires four days after the due date set by Commerce. Commerce rejected Plaintiff's response as untimely, and applied "best information available" to assign Plaintiff a margin of 42.31%. *Shop Towels From Bangladesh: Preliminary Results of Antidumping Duty Administrative Review*, 60 Fed. Reg. 48970, 48971 (Dep't Comm., Sept. 21, 1995) (in which the imported goods at issue, imported by Plaintiff, are identified by the manufacturer, Sonar Cotton Mills).

*Customs Liquidates the Subject Entries on*
*October 11, 1996 and October 18, 1996*

On October 11 and 18, 1996, Customs liquidated Plaintiff's subject entries at the dumping

margin specified in the *Final Results*. This liquidation occurred well over two years after the 8/94

e-mail; almost eight months after the *Final Results* were published in the Federal Register and the

2/96 e-mail was sent; and one and a half months after the 8/96 e-mail was sent.

Plaintiff filed a timely protest of these liquidations; Customs denied Plaintiff's protest;

Plaintiff paid the increased duties; and Plaintiff commenced this action.

**III.**

**Analysis**

**A.**

**Standard of Review**

Under USCIT R. 56(d), summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Glaverbel Societe Anonyme v. Northlake Mktg. &

Supply, Inc., 45 F.3d 1550, 1560 (Fed.Cir.1995); Mingus Constructors, Inc. v. United States, 812

F.2d 1387, 1390-91 (Fed.Cir.1987). In considering whether material facts are in dispute, the

evidence must be considered in a light most favorable to the non-moving party, drawing all

reasonable inferences in its favor, as well as all doubts over factual issues. See Adickes v. S.H.

6

Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 255; Mingus, 812 F.2d at 1390-91. Nevertheless, "[w]hen a motion for summary judgment is made and supported, . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." U.S.C.I.T. R. 56(f). Once it is clear there are no material facts in dispute, a case is proper for summary adjudication.

**B.**

**The Parties' Conflict Is Over
The Trigger For Deemed Liquidation
Pursuant To 19 U.S.C. § 1504(d).**

Plaintiff contends that the six-month period for deemed liquidation under 19 U.S.C. § 1504(d) (1993) commences upon Commerce's publication in the Federal Register of the *Final Results*, an act required under 19 U.S.C. § 1675(a)(1). Plaintiff's Moving Brief at 12. Plaintiff asserts that publication is the method by which Customs "receives notice" within the meaning of § 1504(d). Id. at 13-14. Plaintiff notes that suspension is commenced by publication in the Federal Register of an affirmative preliminary or final determination. 19 U.S.C. § 1673b(c), 19 U.S.C. § 1673d(c)(1)(C). Plaintiff contends that suspension is removed by publication as well, and that this latter publication serves the dual purpose of "notice" to Customs of the removal. Plaintiff's Moving Brief at 12.

The Government argues that receipt by Customs of notice of removal of suspension – either through publication or by communications between Commerce and Customs – is not enough to trigger the provisions of § 1504(d). Defendant's Opposition Brief at 6. Rather, the Government says, even after Customs receives actual notice of the removal of suspension the provisions of §

7

1504(d) are not triggered until Commerce issues liquidation instructions to Customs. Id. at 7. In other words, the Government contends that delay by Commerce in issuing liquidation instructions, following the receipt by Customs of notice of the removal of suspension, excuses Customs from having to comply with the terms of § 1504(d) until it receives those liquidation instructions.

In the context of this case, the Government says published notice to Customs and actual notice, via e-mail, to Customs of the removal of suspension did not trigger the time limitations of § 1504(d). Rather, it argues, the deemed liquidation provisions were not triggered until an individual at Commerce sent a nonpublic e-mail to an individual at Customs, instructing Customs to liquidate. Id. at 23. Essentially, Defendant argues that it is not bound by the deemed liquidation provisions because the agency which "received notice" of the removal of suspension was not given full information by its sister agency. Defendant's assertion is contrary to fairness, common sense, and the plain language of § 1504(d).

The parties' contentions and this Court's conclusions are reviewed in detail below.

## 1.

## When Is Suspension Removed?

In order to determine the date on which Customs receives notice of the removal of suspension, one must first determine the date on which that removal was effected. Plaintiff contends that suspension is removed at the time the final results of an administrative review are published in the Federal Register. Plaintiff's Moving Brief at 15-16. The Government asserts that suspension is not removed until the final results are published and Commerce has instructed Customs to liquidate the entries. Defendant's Opposition Brief at 7.

8

### This Court Has Consistently Held That Suspension Is Removed Upon Publication of the Final Results in the Federal Register.

Plaintiff cites three cases which it claims support its argument that suspension is removed upon publication. In American Permac, Inc. v. United States, 10 CIT 535, 642 F. Supp. 1187 (1986) ("American Permac I"), the Court considered a claim for deemed liquidation, under 19 U.S.C. § 1504(d) (1982). At that time, § 1504(d) provided for deemed liquidation of entries not liquidated within four years from the date of entry. Id., 10 CIT at 535, 642 F. Supp. at 1187. In American Permac I, Commerce did not publish its final results until after the four year period expired. Id., 10 CIT at 537, 642 F. Supp. at 1189. Needless to say, liquidation did not occur within the four-year statutory time limit. However, the 1982 and 1993 versions of § 1504(d) both allow exceptions to deemed liquidation where "liquidation continues to be suspended as required by statute or court order." The importer claimed that suspension was automatically terminated at the end of the four year period, in the absence of any court order continuing suspension. The Court held, however, that suspension was continued "by statute" under 19 U.S.C. § 1965(a)(2) until Commerce completed its review and published the results of its determination, unless a statutory time limit on agency action terminated suspension at some earlier date. Id., 10 CIT at 539, 642 F. Supp. at 1191. The Court noted that Customs had no trigger or information whatsoever for liquidation until Commerce published the final results, as required by statute. Id., 10 CIT at 542, 642 F. Supp. at 1193-94. The Court concluded by stating that

> [b]ecause the court holds that the statutorily required suspension of liquidation continued until the ITA published the final results of its review, it is ORDERED that plaintiff's motion for partial summary judgment upon the agency record is hereby denied.

Id., 10 CIT at 547, 642 F. Supp. at 1197.[4]  The Federal Circuit, reviewing a subsequent related

decision, echoed the CIT's determination in American Permac I that "[t]he 'triggering event' for the

running of the 6-month time period under [§ 1504(d)], therefore, is the lifting of the suspension on

liquidation, which here occurred in August 1989."  American Permac, Inc. v. United States, 191

F.3d 1380, 1381 (1999).

Plaintiff also cites American Permac, Inc. v. United States, 16 CIT 672, 800 F. Supp. 952

(1992) ("American Permac II"), which adopted the reasoning of American Permac I when presented

with a factually indistinguishable later case involving a periodic review of identical entries under the

same antidumping order as that at issue in American Permac I.  Id., 16 CIT at 679, 800 F. Supp. at

958 ("[B]ecause the Court finds the reasoning in API I to be overwhelmingly persuasive, Defendant

is entitled to summary judgment.").

American Permac I's reasoning regarding the date of termination of suspension is again

echoed in Rheem Metalurgica S/A v. United States, 20 CIT 1450, 951 F. Supp. 241 (1996), a

countervailing duty case.  This opinion also involved a claim of deemed liquidation under the

former version of § 1504(d).

> [W]ith respect to statutory suspension of liquidation, the Court note[d]
> Commerce's publication on January 9, 1987 of its findings in the first
> administrative review terminated the statutory suspension of liquidation.  See 19
> U.S.C. § 1675(a)(1) (1988) (results of administrative review become basis for
> assessment of countervailing duties on entries covered by the review); 19 C.F.R.
> § 355.21(a) (1989) (Commerce will publish final countervailing duty order in
> Federal Register that "[i]nstructs the Customs Service to assess countervailing
> duties on the merchandise, in accordance with the Secretary's instructions at the

---

[4]    In order to assess the plaintiff's claim for deemed liquidation in American Permac I, the court was required to consider whether liquidation continued to be suspended by statute or court order.  Had suspension continued to be in effect, § 1504(d) (1982) precluded deemed liquidation.

10

completion of each administrative review") . . . .

20 CIT 1458, 951 F. Supp. at 248.

The Government argues that removal of suspension upon publication of the final results would frustrate the application of § 1504(d), which requires Customs to liquidate "within 6 months of receiving notice of the removal from the Department of Commerce". Defendant's Brief In Reply To The Opposition To The Cross-Motion For Summary Judgement [sic] ("Defendant's Reply Brief") at 9.

The Government says that, if removal of suspension occurs upon publication, "Customs will not have six months after removal of suspension in which to liquidate the entries . . . because Customs cannot liquidate the entries until it is instructed to do so by Commerce." Id. at 9. That, of course, is only true if Commerce fails to provide prompt and full information to Customs in its published determination or soon thereafter. Such a failure is contrary to the Tariff Act, which requires Commerce to include in the published final results "notice of any duty to be assessed." 19 U.S.C. § 1675(a)(1) (1988). This Court has been presented with no persuasive authority which allows the Government to circumvent the time limits set forth in the Tariff Act through its own failure to abide by the strictures of that Act.

Defendant relies on the Federal Circuit's decision in Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560 (Fed. Cir. 1984), which upheld Commerce's authority to retroactively apply the final results of a countervailing duty review, by finding an implied extension of suspension past the one year period for liquidation set forth in 19 U.S.C.§ 1504(a) (1978). In that case, the Court found an extension of suspension necessary to avoid frustrating the purpose of the newly enacted amendments of 19 U.S.C. § 1675(a) (1979).

11

Florsheim, however, is far narrower in scope than Defendant claims.  The Court in its decision stressed that it considered "only the procedure respecting a nonagreement country under 19 U.S.C. § 1303." Id.,  748 F.2d at 1565.  Moreover, its analysis of § 1504(a) and (b) is distinguishable from the issues presented by § 1504(d), as pointed out in American Permac I.  The Florsheim Court relied on 19 U.S.C. § 1504(b) (1978) as providing the basis for the implied extension of the suspension period.  19 U.S.C. § 1504(b) (1978) allowed the Secretary to extend the time allowed for liquidation by formal notice of extension to the importer if, inter alia,

(1)     information needed for the proper appraisement or classification of the merchandise was not available to the appropriate customs officer; or

(2)     liquidation is suspended as required by statute or court order.[5]

It appears that, in the instant action, the Government's argument parallels 19 U.S.C. § 1504(b)(1) (1978):  The Government essentially asserts that suspension did not terminate upon publication "because Customs cannot liquidate the entries until it is instructed to do so by Commerce."  Defendant's Reply Brief at 9.  However, § 1504(d) (1993) has no analogous exception to § 1504(b)(1).  See American Permac I, 10 CIT at 538, 642 F. Supp. at 1190-91.   "Consequently, the fact that Customs officials lack information necessary to assess antidumping duties due to the ITA's failure to complete its review would not, of itself, justify extending the liquidation

---

[5]     Section 1504(b) (1996) now allows for extension of the period for liquidation where (1) the information needed for the proper appraisement or classification of the merchandise is not available to Customs or (2) the importer requests the extension and demonstrates good cause for such an extension.  The provision for an extension of liquidation pursuant to statute or court order, formerly set forth in § 1504(b)(2) (1978), has now been deleted.  It appears that former § 1504(b)(2) (1978) was redundant in light of the provisions of § 1504(d), which is only triggered when the suspension required by statute or court order is removed.

In any event, both the former and the current versions of § 1504(b) require that the Secretary give the importer notice of any extension.  In the instant action, no such notice was given.

12

deadline[.]" 10 CIT at 538-39, 642 F. Supp. at 1191.  Indeed, under the prior version of § 1504(d), if suspension was removed one day before the deadline for Customs to liquidate, and Customs failed to liquidate within that day, then deemed liquidation would occur.  See Dal-Tile Corp. v. United States, 17 CIT 764, 771, 829 F. Supp. 394, 399-400 (1993).  Plainly, Customs' convenience is not the purpose of this Act.

In contrast to § 1504(b)(1), § 1504(b)(2) (regarding a suspension required by statute or court order) does have a parallel within § 1504(d).   However, as noted in American Permac I and as implicit in Florsheim[6], "the statutorily required suspension of liquidation continued [only] until [Commerce] published the final results of its review[.]"  10 CIT at 547, 642 F. Supp. at 1197.

Although this Court is not bound by the decisions in American Permac I, American Permac II  and Rheem, see Algoma Steel Corp. v. United States, 865 F. 2d 240, 243 (Fed. Cir.), cert. denied, 492 U.S. 919 (1989), it finds their reasoning persuasive.  Their conclusions are  reinforced by practical considerations, by the structure of the Tariff Act's provisions for antidumping, and by several aspects of the legislative history of the version of § 1504(d) that is at issue.

**b.**

**The Tariff Act and Its Legislative History**
**Reinforce the Conclusion That Suspension is Removed Upon Publication.**

Before the enactment of § 1504, no provision limited the amount of time that Customs could expend before liquidating an entry.  St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763,

---

[6]      "On May 12, 1980, ITA announced it would review all outstanding . . . countervailing duty orders.  Meanwhile it directed Customs to maintain its suspension of liquidation.  On February 17, 1982, ITA published the results of its review of the subject 1980 imports. . . .  It directed Customs to make assessments accordingly, meaning final liquidations."  Florsheim, 748 F.2d at 1561.

13

767 (Fed. Cir. 1993). In 1978, Congress enacted § 1504(d) to add a four-year time limitation for liquidation. The primary purpose of that provision was to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." See Dal-Tile, 17 CIT at 770, 829 F. Supp. at 399 (internal quotations and citation omitted).

The history of the Trade Agreements Act of 1979, which forms the basis for the current antidumping scheme, reveals a similar purpose: to expedite the decisionmaking process and the assessment of antidumping duties by establishing strict time constraints and to increase the transparency of all phases of a dumping case. Sen. Rep. No. 96-249 at 37 and 41 (1979), *reprinted in* 1979 U.S.C.C.A.N. 423, 427.

19 U.S.C. § 1504(d) (1993) incorporated amendments from the NAFTA Implementation Act. These amendments were designed in part to cure a flaw in the original version of the statute, which made the removal of suspension discretionary with Commerce. In short, Commerce was able to avoid the deemed liquidation deadlines simply by delaying publication until after the expiration of the 4-year period for liquidation. See Dal-Tile Corp., 17 CIT at 771, 829 F. Supp. at 399. The legislative history of the earlier versions indicated that this discretion had been provided to allow for instances in which the sheer volume of entries precluded rapid liquidation. In practice, however, "a lack of administrative diligence rather than overwhelming numbers of entries appears to have prompted the liquidation delays." Id., 17 CIT at 770-71, 829 F. Supp. at 399.

Adoption by this Court of the Government's position would encourage administrative delay. In addition, the Government would tie removal of suspension to a nonpublic e-mail that does not mention the removal of suspension. That position frustrates Congress' oft-expressed intent to foster

certainty and transparency in the importing process.

Plaintiff's construction of the Tariff Act, tying removal of suspension to publication, is buttressed by a review of the antidumping provisions of the Act. Under the Act, suspension is commenced by publication of an affirmative preliminary or final determination in the Federal Register. 19 U.S.C. § 1673b(c), 19 U.S.C. § 1673d(c)(1)(C). Plaintiff's proposed construction would make the process for removal of suspension parallel to its commencement, and would give it equal certainty. This construction finds further support in those few provisions of the Tariff Act that do make express provision for the removal of suspension. See 19 U.S.C. § 1673c(h)(3) (1988)[7];19

---

[7]  1673c  Termination or suspension of investigation
* * *
(h)  Review of suspension
* * *
(3) Suspension of liquidation to continue during review period

The suspension of liquidation of entries of the merchandise which is the subject of the investigation shall terminate at the close of the 20-day period beginning on the day after the date on which notice of suspension of the investigation is published in the Federal Register, or, if a review petition is filed under paragraph (1) with respect to the suspension of the investigation, in the case of an affirmative determination by the Commission under paragraph (2), the date on which notice of an affirmative determination by the Commission is published. If the determination of the Commission under paragraph (2) is affirmative, then the administering authority shall--

(A) terminate the suspension of liquidation under section 1673b(d)(1) of this title, and

(B) release any bond or other security, and refund any cash deposit, required under section 1673b(d)(2) of this title.

15

U.S.C. § 1675(f) (1988)[8]. See also 19 C.F.R. 353.20(d) (1993)[9]. Each of these provisions ties

removal to publication in the Federal Register.

**c.**

**Commerce's Regulations Pursuant to 19 U.S.C. § 1675
Reinforce the Conclusion That Suspension is Removed Upon Publication.**

Defendant claims suspension was not removed upon publication, because Commerce had

not yet completed its administrative review. This assertion is belied by the requirements of

Commerce's regulation in 19 C.F.R. 353.22(c)(9) (1993), which requires Commerce to "[p]romptly

after issuing the final results, provide to parties to the proceeding which request disclosure a further

explanation of the calculation methodology used in reaching the final results." If the administrative

review had not been completed at the time of publication, Commerce would have been unable to

comply with its own regulation. Moreover, as the government's counsel admitted at oral argument,

---

[8]    1675    Administrative review of determinations
       * * *
       (f)    Determination that basis for suspension no longer exists

       If the determination of the Commission under subsection (b)(2)(B) of this
       section is negative, the suspension agreement shall be treated as not
       accepted, beginning on the date of publication of the Commission's
       determination, and the administering authority and the Commission shall
       proceed, under section 1671c(i) or 1673c(i) of this title, as if the
       suspension agreement had been violated on that date, except that no duty
       under any order subsequently issued shall be assessed on merchandise
       entered, or withdrawn from warehouse, for consumption before that date.


[9]    353.20(d) Effect of negative final determination.

       . . . If the Secretary previously ordered suspension of liquidation, the Secretary
       will order the suspension ended on the date of publication of the notice of
       negative final determination . . . .

16

Commerce does not alter the final results following publication unless a mistake in those results is brought to its attention. In such a situation, amended final results must be published, and that new publication triggers a new period for protest. See 19 U.S.C. § 1514(c)(3).

This Court thus finds that suspension was removed on the date of publication by Commerce of the *Final Results*.[10] The Court must next determine the date on which Customs "received notice" of this removal of suspension.

**2.**

**Customs "Receives Notice of The Removal of Suspension"
When It Receives a Direct Communication from Commerce
Informing It That The Final Results Have Been Published.**

---

[10]      Defendant has cited to <u>United States v. Jick</u>, 27 F. Supp. 2d 199 (CIT 1998), in support of its claim that suspension is removed by the issuance of liquidation instructions, rather than by publication of the final results. <u>Jick</u> is, in all relevant respects, factually and legal identical to the instant action. As here, the importer in <u>Jick</u> sought deemed liquidation, arguing that the publication of the final results removed the suspension of liquidation, although the results contained no explicit language to that effect. The importer cited to an earlier version of § 1504(d), which is identical in the material respects. Similarly, the government in <u>Jick</u> contended that suspension remained in effect until Commerce issued unpublished email instructions, which stated that "[t]hese instructions constitute the immediate lifting of suspension of liquidation[.]" 27 F. Supp. 2d at 200. In <u>Jick</u>, the court concluded that publication of the final results did <u>not</u> remove suspension in the absence of an express directive to that effect contained within the published final results. Rather, the <u>Jick</u> court held that suspension was removed only upon the issuance of unpublished email instructions to that effect from Commerce.

The <u>Jick</u> opinion rested on the familiar line of authority that suspension is "required by statute" during an administrative review. No separate authority was cited for the court's conclusion that "Commerce completes [that] administrative review by issuing its liquidation instructions to Customs and by lifting the suspension of liquidation." <u>Id.</u>, 27 F. Supp. 2d at 201. Rather, the court drew an adverse inference against the importer/movant, which had failed to cite authority supporting its assertion that the review and concomitant suspension were terminated upon publication.

Plaintiff here, however, has supplied this Court with extensive and persuasive authority supporting its claim that suspension is removed upon publication. Based upon its analysis of that authority, as detailed above, this Court declines to follow <u>Jick</u>. See <u>Algoma Steel</u>, 865 F.2d at 243.

17

Plaintiff asserts that publication by Commerce of the *Final Results* constituted notice to Customs of the removal of suspension.

Defendant contends that publication was not notice to Customs, and that Customs did not receive notice within the meaning of § 1504(d) until it received instructions from Commerce to liquidate.  Each of these contentions is analyzed in turn below.

**a.**

**Mere Publication in the Federal Register**
**Is Not Sufficient To Provide "Notice" to Customs.**

Plaintiff cites the Federal Register Act, 44 U.S.C. § 1507, which provides that "[u]nless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, . . . is sufficient to give notice of the contents of the document to a person subject to or affected by it."  Plaintiff asserts that Customs is within the ambit of  § 1507 because it is "affected by" the *Final Results*.  Plaintiff's Moving Brief at 8.  Defendant accurately notes, however, that Customs is not a "person" within the meaning of § 1507, because 44 U.S.C. § 1501 defines person only as "an individual, partnership, association, or corporation."  Defendant's Opposition Brief at 15-16.  Section 1501 includes a separate definition of "Federal agency" or "agency", which includes executive departments, agencies or separate offices of the administrative branch of the Government of the United States.  Plaintiff's § 1507 argument contravenes the clearly expressed legislative intent, as embodied in the definitions set forth in § 1501.  Moreover, this Court has not located, nor has Plaintiff provided, any case holding that an administrative agency is a "person" within the meaning of the Federal Register Act.  The Court thus rejects that argument.

18

19 U.S.C. § 1673(a)(1), which mandates publication of the final results of the administrative review, does require Commerce to include in those results "notice of any duty to be assessed". The *Final Results* at issue in this case indeed do include specific instructions to Customs. However, since suspension is removed by publication, the critical issue for purposes of § 1504(d) is when Customs "received notice" of the fact that the *Final Results* had been published; the issue is not the contents of the *Results* themselves. In this determination, Customs has no greater chance of learning of the fact of publication whether or not the Results include specific instructions to Customs. The *Final Results* themselves are not tantamount to the notice of removal of suspension contemplated by § 1504(d).

Review of the use of the word "notice" throughout the Tariff Act clearly shows a distinction between the unadorned word "notice" or "notify" and the concept of publication of notice in the Federal Register. <u>Compare</u> 19 U.S.C. § 1671d(d) and 19 U.S.C. § 1673d(d) (each of which provides that when Commerce makes a determination under the section's provisions, it shall "notify the petitioner, other parties to the investigation, and the other agency of its determination" <u>and</u> it shall "publish notice of its determination"). <u>Compare also</u> 19 U.S.C. § 1671b(f) (requiring the Commission and Commerce to "notify the petitioner, and other parties to the investigation, and the [coordinate agency]" of its determination) to 19 U.S.C. § 1671c(f)(1)(A) (requiring Commerce to "publish notice of suspension of the investigation"); 19 U.S.C. § 1671c(f)(1)() (providing that "suspension of the investigation shall take effect on the day on which such notice is published); and § 1671c(i)(1)(A)(i) (providing for suspension of liquidation on or after "the date which is 90 days before the date of publication of the notice of suspension of liquidation"). "[W]here Congress has included specific language in one section of a statute but has

19

omitted it from another, related section of the same Act, it is generally presumed that Congress intended the omission."  Floral Trade Council v. United States, 41 F. Supp. 2d 319, 329 (1999) (Pogue, J.).  In § 1504(d), Congress omitted reference to publication of notice. Were this Court to embrace Plaintiff's argument that "notice" in the Tariff Act was tantamount to publication, those provisions requiring publication would in many instances be rendered superfluous.  Floral Trade Council, 41 F. Supp. 2d at 335 ("a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant").

The Court thus rejects Plaintiff's claim that Customs "receives notice" of the removal of suspension within the meaning of 19 U.S.C. § 1504(d) (1993) through publication of the final results.  It must next determine whether any of  the various e-mails from Commerce to Customs following the removal of suspension constituted "notice" to Customs.

**b.**

**19 U.S.C. § 1504(d) Is Satisfied By A Direct Communication
From Commerce to Customs
Notifying Customs of the Removal of Suspension.**

The Tariff Act does not define the term"notice".  See 19 U.S.C. § 1677, Definitions; special rules.  Webster's Third New International Dictionary (1986) provides the following  primary definition of "notice":

> formal or informal warning or intimation of something: ANNOUNCEMENT <subject to change without ~ – *Dun's Rev.*> <was ~ that Britain meant to crack down on violence – *Time*> <give ~ of the fat and wrinkles coming to the young bride – H.M. Parshley>

"Notice in its legal sense may be defined as information concerning a fact, actually communicated to a person by an authorized person, or actually derived by him from a proper source."  United

20

States v. Tuteur, 215 F.2d 415, 418 (1954).

Commerce sent two different e-mails to Customs following the removal of suspension.[11]  On February 13, 1996, the day following publication of the *Final Results*, Customs issued Message No. 6044113.  This e-mail explicitly stated that "the Department of Commerce has completed its administrative review" and cited the Federal Register publication of the final determination which, under the holding above, constituted removal of the suspension.  This Court finds that Customs "received notice" of the removal of suspension, within the plain meaning of § 1504(d), through the 2/96 e-mail, which actually communicated the relevant fact -- the removal of suspension via publication of the *Final Results* in the Federal Register -- to Customs.  This method of notice is sufficient under the express terms of § 1504.

### c.

**Due Process Requires That
The Notice to Customs Under 19 U.S.C. § 1504(d)
Be Available to the Public.**

Plaintiff contends that "[f]undamental notions of procedural due process required by the 5[th] Amendment of the Constitution require that the date of deemed liquidation be publicly determinable."  Plaintiff's Moving Brief at 38-39.  Plaintiff contends that any e-mail notice to Customs under § 1504(d) must be available or released for public disclosure, so that the date for deemed liquidation may be known to the importer.  Id. at 39.  Plaintiff contends that the publicly releaseable 2/96 e-mail may, consistent with due process requirements, serve as notice within the meaning of § 1504(d), while the nonpublic 8/96 e-mail may not.  Id. at 40.  This Court agrees.

---

[11]     The August 1994 e-mail was sent prior to the removal of suspension and thus cannot serve as notice of that removal.

21

It is well established that when considering a procedural due process issue, "the court must first determine whether a protected property or liberty interest exists, and if such an interest exists, then determine what procedures are necessary to protect that interest." Techsnabexport, Ltd. v. United States, 16 CIT 420, 426, 795 F. Supp. 428, 435 (1992). See American Ass'n of Exporters and Importers v. United States, 751 F.2d 1239, 1250 (Fed. Cir.1985); Comm. to Preserve Am. Color Television and Imports Comm., Tube Div., Elec. Indus. Ass'n v. United States, 2 CIT 208, 218, 527 F. Supp. 341, 350 (1981).

For an interest to be protected by the Constitution, it must be "more than a 'unilateral expectation.'" PPG Indus., Inc. v. United States, 13 CIT 183, 189, 708 F. Supp. 1327, 1331 (1989) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). One who claims due process protection for a property interest must have "a legitimate claim of entitlement to it." Board of Regents, 408 U.S. at 577. "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. "Property interests are created not by the Constitution itself, but are created and defined by independent sources such as state statutes, regulations, municipal ordinances, and contracts." Id.

"[A] unilateral expectation of receiving an economic benefit fails to constitute a protected property interest." Cevallos v. City of Los Angeles, 914 F. Supp. 379, 383 (C.D. Cal. 1996). "In order for a statute to create a legitimate claim of entitlement, it must limit an official's discretion in denying the benefit to objective and defined criteria." Coleman v. McGinnis, 843 F. Supp. 320, 324 (E.D. Mich. 1994) (citing Olim v. Wakinekona, 461 U.S. 238, 239 (1983)). Cf. Peitrofeso v. United States, 16 CIT 751, 755, 801 F. Supp. 743, 747 (1992) (finding no protected property interest in the

issuance of a customs broker license where "[t]he statute does not tell the Secretary when he or she must grant a license" and "the regulations provide the Secretary with a certain amount of discretion"). "[T]he statute must contain objective criteria which will control the decisionmaker's conclusion, and the statute must require a particular result upon a finding that the criteria are met." Coleman, 843 F. Supp. at 324 (citing Wallice v. Robinson, 940 F.2d 243 (7th Cir.1991); Newsom v. Norris, 888 F.2d 371, 374 (6th Cir.1989)). Deemed liquidation, an event which has quantifiable economic consequences for both importer and government, is a property interest defined by specific criteria set forth in § 1504(d). Deemed liquidation is more than a mere "unilateral expectation," but is a "legitimate claim of entitlement."[12]

Liquidation, including deemed liquidation, of a Customs entry is conclusive unless a timely protest is filed within 90 days of the date of liquidation. If the period for deemed liquidation is triggered by a nonpublic e-mail, an importer has no notice of the fact of deemed liquidation and cannot protest a subsequent attempt by the government to liquidate the same entry.

"[I]n calculating the constitutional sufficiency of notice, the court must examine all of the circumstances and make a determination based upon the reasonableness of the notice and participation." Techsnabexport, 16 CIT at 428, 795 F.Supp. at 436. Commencement of deemed liquidation by an e-mail which is not for public disclosure provides no notice whatsoever.

In Lois Jeans & Jackets, U.S.A., Inc. v. United States, 5 CIT 238, 566 F.Supp. 1523 (1983), the court found a violation of due process in a similar lack of notice. Lois Jeans protested notices of redelivery by Customs regarding its imports of certain jeans, the designs of which were initially

---

[12] "Several cases in this court . . . have recognized . . . that due process rights stem from statutes involving imports." Techsnabexport, 16 CIT at 427, 795 F.Supp. at 436 (listing cases).

found to infringe trademarks held by Levi's. After Lois prevailed in its protest, counsel for Levi's requested that Customs reconsider its ruling in Lois' favor. Customs failed to notify Lois of Levi's submission, or that the original ruling was under reconsideration. Nor, indeed, did Customs even notify Lois when it reversed its original ruling, and issued another unpublished ruling prohibiting further entries of Lois' jeans. Rather, Lois learned of the ruling from a news article. The court held that "the procedural irregularities complained of by Lois – viz., lack of notice and opportunity to comment – are so fundamentally prejudicial as to constitute a deprivation of due process." 5 CIT at 243, 566 F. Supp. at 1528.

Tying commencement of the time period for deemed liquidation to a nonpublic e-mail is, while less egregious, no less a violation of procedural due process rights. As in Lois, the fact that the importer may, eventually, learn of the administrative action does not redeem the procedural defect in notice. A nonpublic e-mail may not, consistent with considerations of due process, serve as the premise for deemed liquidation.

**d.**

**19 U.S.C. § 1504(d) Requires No More Than
Simple Notice of the Removal of Suspension.**

Defendant, however, asserts that the February 13, 1996 e-mail was insufficient "notice" to trigger the provisions of § 1504(d) regarding deemed liquidation. Defendant notes that the February 1996 e-mail cautioned Customs not to liquidate "any entries covered by this review until you have received liquidation instructions." Defendant's Opposition Brief at 17. Defendant suggests that this cautionary language implements the regulations of 19 C.F.R. 353.22 (1993), which provides separately for publication of the final results, 353.22(c)(8), and the issuance of instructions to

24

Customs to assess antidumping duties 353.22(c)(10). Defendant contends that these regulations require two separate steps as a prerequisite for liquidation.

These regulations are not entitled to deference. Where, as here, "Congress has directly spoken to the precise question at issue . . . , that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). Because the statute is not "silent or ambiguous with respect to the specific issue," the Court need not reach the second Chevron step to determine "whether the agency's answer is based on a permissible construction of the statute." Id., 467 U.S. at 843. Even if that step were reached, neither of the cited regulations discuss the critical issue of notice to Customs of the removal of suspension. Because they are not agency interpretations of the terms at issue – 1504(d)'s "received notice" language – they are not entitled to Chevron deference[13] and offer no guidance on the subject at hand.

Defendant asks that an additional triggering requirement – the issuance of liquidation instructions – be read into the plain terms of § 1504(d). To do so would run afoul of a basic principle of statutory construction: "[W]here a statute expressly enumerates the requirements on which it is to operate, additional requirements are not to be implied." Trayco, Inc. v. United States, 994 F.2d 832, 836 (Fed. Cir. 1993). There is no such language in the statute, which is clear and unambiguous in its omission of the suggested element. "[W]hen a statute is unambiguous, judicial inquiry is complete." Nunn Bush Shoe Co. v. United States, 16 CIT 45, 48, 784 F. Supp. 892, 894-

---

[13]    See Chevron, 467 U.S. at 842-43. Chevron deference has been extended to administrative regulations. United States v. Haggar Apparel Co., 526 U.S. 380 (1999). However, such deference embraces only "an agency's construction of the statute which it administers[.]" Chevron, 467 U.S. at 842. While Commerce does administer the statute at issue, the cited regulations are not a construction of that statute.

25

95 (1992) (quotations and citation omitted)**.**

This conclusion is reinforced by certain 1994 amendments to 19 U.S.C. § 1675(a)(3), which added provisions for liquidation "within 90 days after the <u>instructions to Customs are issued</u>", which 90-day period commences "on the day on which the administering authority <u>issues such instructions.</u>" 19 U.S.C. § 1675(a)(3)(B) and (C) (as amended 1994) (emphasis added). The parties have identified no other such provision in the Tariff Act, nor can the Court find any. Also in 1994, Congress amended § 1504(d) to read:

> <u>Except as provided in section 1675(a)(3),</u> when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, . . . within 6 months after receiving notice of the removal from the Department of Commerce, other agency or a court with jurisdiction over the entry. Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d) (amended 1994) (new language emphasized). Thus, prior to the 1994 amendments, § 1504(d) contained no reference whatsoever to liquidation instructions. These amendments reveal a critical flaw in Defendant's argument: If Defendant was correct in its assertion that § 1504(d) (1993) is triggered by the issuance of liquidation instructions, the 1994 amendments would have been superfluous. "We can safely assume that Congress changed the language for a reason. A change in the language of a statute is generally construed to import a change in meaning." <u>Bausch & Lomb, Inc. v. United States</u>, 148 F.3d 1363, 1367 (Fed. Cir. 1998) (internal quotations and citation omitted).

These amendments also reveal that Congress was capable of specifying the occasions on which it wanted the issuance of instructions to Customs to act as the trigger for a subsequent event. Yet it did not do so in § 1504(d) (1993). This Court declines to do so retroactively.

26

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion For Summary Judgment is granted in full, and Defendant's Cross-Motion For Summary Judgment is denied.

_____
Evan J. Wallach, Judge

Dated: July 14, 2000
      New York, New York