SLIP OP. 00-123

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  JAMES L. WATSON, SENIOR JUDGE**

| | | |
|---|---|---|
| **UNITED STATES,** | : | |
| **Plaintiff,** | : | |
| v. | : | |
| **SPANISH FOODS, INC., et al.,** | : | |
| **Defendants,** | : | |
| **and** | : | **Court No. 98-03-00620** |
| **FAUSTO DIAZ-OLIVER, et al.,** | : | |
| **Third-Party Plaintiffs,** | : | |
| v. | : | |
| **CLAUDIO L. MARTINEZ,** | : | |
| **Third-Party Defendant.** | : | |

[Plaintiff's motion for summary judgment denied; defendants' cross-motion for summary judgment denied.]

Dated: September 27, 2000

David W. Odgen, Acting Assistant Attorney General; David M. Cohen, Director; A. David Lafer, Senior Trial Counsel (James W. Poirier, Attorney), Commercial Litigation Branch, Civil Division, United States Department of Justice, of counsel, for plaintiff.

Collier Shannon Scott, PLLC (Paul C. Rosenthal, John B. Brew, John P. Lohrer, and John M. Herrmann, Esqs.) for defendant Remedios Diaz-Oliver.

Fotopulos & Spridgeon (Thomas E. Fotopulos, Esq,) for defendant Fausto Diaz-Oliver.

Carroll & Associates, P.A. (Linda L. Carroll, Esq,) for defendant Lilliam S. Martinez.

**WATSON, SENIOR JUDGE:**

<u>INTRODUCTION</u>

This is a civil action for penalties commenced by the Government pursuant to 19 U.S.C. § 1592, which action falls within the court's jurisdiction under 28 U.S.C. § 1582. Defendants have moved for summary judgment claiming the Government commenced this action after the expiration of the five-year statute of limitations pursuant to 19 U.S.C. § 1621. The Government has filed a cross-motion for summary judgment striking defendants' statute of limitations defense contending that this action was commenced in a timely manner. The cross-motions for summary judgment are denied on the ground that there remains triable issues of fact.

<u>FACTUAL BACKGROUND</u>

In September 1987, Spanish Foods, Inc. ("Spanish Foods"), which had previously conducted its business under the name of "Foods from Spain," was designated as the exclusive U.S. distributor of "La Molinera" brand food products by Hermandez-Perez Hermanos, S.A. ("HPH"). HPH was a Spanish food exporting company which owned the "Molinera" brand name and had a 51% ownership interest in Spanish Foods.

Juan Antonio Sirvent Selfa, S.A. ("JASS"), also exported food products to the United States and used Spanish Foods as its exclusive U.S. importer and distributor. Thus, Spanish Foods was importing food from both HPH and JASS.

Soon after JASS began using Spanish Foods as its U.S. distributor and importer, JASS was sued by its former U.S. distributor and importer, General Commodities International, Inc. ("GCI"), for breach of contract. The law firm of Holland & Knight represented GCI in the lawsuit against JASS.

In the course of the litigation between GCI and JASS, George Mencio, a partner of Holland & Knight, requested and received documents from Spanish Foods that revealed to GCI that a "double invoicing" system[1] existed between Spanish Foods and JASS.  Furthermore, in GCI's lawsuit against JASS, GCI's attorney, Mr. Mencio, deposed one of the defendants in the current action, Lilliam Martinez, a Spanish Foods officer.  Defendants concede that in her deposition in the GCI/Jass lawsuit, Ms. Martinez had admitted that Spanish Foods also had a double invoicing system with HPH.

In early 1993, Mencio then contacted Holland & Knight's private investigator, Mr. Don Zell, to discuss the double invoicing between JASS and Spanish Foods.  At a meeting, Mencio and Mr. Benigno Gonzalez, a GCI officer, briefed Mr. Zell concerning the double invoicing system and showed Zell two invoices and a cover letter from JASS to Spanish Foods that refers to those invoices.  Mr. Zell was then asked by Gonzalez and Mencio to contact the U.S. Customs Service ("Customs") regarding a double invoicing system between JASS and Spanish Foods and to arrange a meeting with Customs.  Zell, a former federal law enforcement officer, used his law enforcement contacts to determine the appropriate Customs' agent with which to have a meeting regarding Spanish Foods' double invoicing system.  Through his sources, Mr. Zell obtained the name of Special Agent Carelli, a criminal investigator for Customs' Fraud Division.

On March 24, 1993, Mr. Zell contacted Agent Carelli by telephone.  Both Zell and Carelli have been deposed concerning this telephone conversation and a subsequent meeting on March

---

[1] The expression "double invoicing" is used in this opinion to refer to an exporter's practice of issuing two invoices to the importer for the same sale that contain different prices. However, upon entry only the invoice with the lesser values is submitted to Customs by the importer or consignee.  The issue in this case is whether such double invoicing system was fraudulent in violation of 19 U.S.C. § 1592, as claimed by the Government.

29, 1993. In his deposition, Zell testified in substance that he recalled informing Agent Carelli that there appeared to be a "false invoicing system," as evidenced by two invoices and a cover letter, and that he provided Carelli the names of Spanish Foods and one of its officers, Lilliam Martinez.

In his deposition, however, Carelli testified that he did not recall the exact words of the conversation with Zell, but did recall that Zell requested a meeting between Holland & Knight and Customs. Carelli further testified that he did not recall Zell mentioning any invoices, cover letters, names, or any other particular details concerning double invoicing. Carelli could recall only that he had agreed to a meeting with Holland & Knight and that Zell informed him that Mencio would call him to schedule the meeting.

Additionally, Carelli's supervisor, Agent Robin Avers, was also deposed, and proffered testimony that after Zell's telephone conversation with Carelli, the latter had not given her any details concerning what would be discussed at the meeting with Holland & Knight. Avers further testified that she and Carelli went to the meeting at Holland & Knight on March 29, 1993 "in the blind," without any knowledge of what information or documents they would receive at the meeting.

There is no dispute that after the telephone conversation between Zell and Carelli, a meeting was scheduled where Customs would meet with Mr. Mencio and his client (who was not initially disclosed to Customs). Additionally, it is not disputed that on March 29, 1993, Agents Carelli and Avers met with GCI and Mencio at the offices of Holland & Knight; that GCI provided to Customs copies of two invoices with different prices covering the same sales transaction and merchandise with a cover letter evidencing double invoicing between JASS and

Spanish Foods; and that at the meeting at Holland & Knight, Agents Carelli and Avers were not provided with the specific entry numbers corresponding to the invoices.

Shortly after the March 29, 1993 meeting at Holland & Knight, Customs initiated a fraud investigation which culminated both in a criminal prosecution where the defendants plead guilty to various criminal charges, and also in the commencement of the current civil action on March 27, 1998, which is five years and three days following Zell's telephone call to Carelli on March 24, 1993, but is within five years of the March 29, 1993 meeting.

## PARTIES' CONTENTIONS

Defendants contend that Zell's deposition establishes that in his telephone call to Carelli on March 24, 1993, Zell informed Carelli that his law firm, Holland & Knight, and its client (who was later disclosed to be GCI) had evidence of double invoicing involving Spanish Foods and one of its officers, Lilliam Martinez. Thus, defendants insist that the foregoing telephone call sufficiently disclosed to Customs that the double invoicing of sales transactions to Spanish Foods raised the possibility that defendants had submitted a fraudulent invoice to Customs in connection with entries. Accordingly, defendants contend that the March 24, 1993 telephone call by Zell to Carelli triggered the running of the five-year statute of limitation provided in 19 U.S.C. § 1621 for commencing a 19 U.S.C. § 1592 fraud action.

The Government, however, contends that the depositions of Carelli and Avers show that Zell merely contacted Carelli to set up a meeting with Mencio and his client, who was not disclosed, did not mention Spanish Foods or the names of any of its officers, did not mention double invoicing, and gave no details or particulars concerning fraud or the nature of any other violation of § 1592. The Government further contends that the deposition testimony shows that

Agent Carelli had no knowledge of what the requested meeting would pertain to or with whom

Customs would be meeting other than Zell, Mencio, and the latter's client. Therefore, the

Government argues that no discovery of fraud could result from Zell's telephone call, and that

the statute of limitations did not begin to run at the time of the telephone call, as claimed by

defendants, but rather not until sometime after the March 29, 1993 meeting.

It is apparent that the Zell-Carelli telephone conversation of March 24, 1993 is critical to

the statute of limitations issue, and that the parties' evidence as to the telephone call is

diametrically opposed. Accordingly, the court concludes that summary judgment is precluded

because there are genuine issues of material fact.

## **DISCUSSION**

Under CIT Rule 56(d), summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); International Trading Co. v.

United States, __ CIT __, Slip Op. 00-83 (July 14, 2000), 2000 WL 1024804 at *3. When a party

moves for summary judgment, it bears the burden of demonstrating the absence of any genuine

issues of material fact. Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560

(Fed. Cir. 1988). However, it remains a function of the court to "determine whether there are any

factual disputes that are material to the resolution of the action. The court may not resolve or try

factual issues on a motion for summary judgment." Sea-Land Service, Inc. v. United States, 69

F. Supp. 2d 1371, 1375 (1999) (quoting Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690

F. Supp. 1048, 1050).  See also, Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (stating that

"the judge's function is not himself to weigh the evidence and determine the truth of the matter,

but to determine whether there is a genuine issue for trial.").  Therefore, the court should deny

summary judgment if the parties present a "dispute about a fact such that a reasonable trier of

fact could return a verdict against the movant." Ugg Int'l. Inc. v. United States, 17 CIT 79, 83,

813 F. Supp. 848, 852 (1993); Pfaff Am. Sales Corp. v. United States, 16 CIT 1073, 1074

(1992).  Here, as stated above, because there are genuine issues of material fact relating to the

March 24, 1993 telephone call, summary judgment as to whether this action is barred by the

statute of limitations is precluded.

Where the Government establishes that false invoices have been filed by the importer at

entry, the Government may seek to collect civil penalties for fraudulent, grossly negligent or

negligent violations under § 1592.  United States v. Modes, Inc., 16 CIT 879, 880-81, 804 F.

Supp. 360 (1992).  Section 1592 prohibits a person, by fraud, gross negligence, or negligence

from entering, introducing, or attempting to enter or introduce any merchandise into the

commerce of the United States by means of (i) any document, written or oral statement, or act

which is material and false, or (ii) any omission which is material.  19 U.S.C.§ 1592.

Here, the Government contends that defendants violated 19 U.S.C. § 1592 through their

use of a double invoicing scheme and resulting false and fraudulent statements submitted to

Customs.  Actions brought under 19 U.S.C. § 1592 are subject to the following statute of

limitations pursuant to 19 U.S.C. § 1621, which reads:

> No suit or action to recover any pecuniary penalty or forfeiture of property
> accruing under the customs laws shall be instituted unless such suit or action is
> commenced within five years after the time when the alleged offense was

discovered: Provided, That in the case of an alleged violation of section 1592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than five years after the date the alleged violation was committed: * * *

19 U.S.C. § 1621 (1993) (emphasis added). "Courts have construed the first clause of §1621 to embrace the 'discovery rule' in fraud cases, which tolls the limitations period until the time the fraud is discovered." United States v. Ziegler Bolt and Parts Co., 19 CIT 13, 17 (1995) (citations omitted). Thus, "under the discovery rule the statute of limitations is tolled until the date when the plaintiff first learns of the fraud or is sufficiently on notice as to the possibility of fraud to discover its existence with the exercise of due diligence." Modes, Inc., 16 CIT at 887 (citing United States v. RITA Organics, Inc., 487 F. Supp. 75, 77 (N.D. Ill. 1980)). See also, Ziegler Bolt and Parts Co., 19 CIT at 17; United States v. Shabahang Persian Carpets, LTD., 926 F. Supp. 123, 126 (E.D. Wis. 1996).

According to defendants, Zell identified the importer (Spanish Foods), and an officer of the importer (Ms. Martinez), and disclosed double invoicing involving the importer to Agent Carelli, a fraud investigator, during their March 24, 1993 telephone conversation. Citing Modes, supra, defendants have raised a statute of limitations defense of asserting that Zell's telephone conversation with Agent Carelli was sufficient to put Customs on notice of the possibility of fraud to discover its existence with the exercise of due diligence. However, as indicated above, the Government's version of the telephone conversation between Mr. Zell and Agent Carelli is that Carelli only agreed to have a meeting and there was no disclosure to him of the importer's name or disclosure of any particulars concerning a violation of § 1592.

As observed in Shabahang Persian Carpets, LTD., 926 F. Supp. at 126, "the

determination of when the statute of limitations begins to run is a fact-specific inquiry."

Specifically, when Customs first learns of the fraud or is sufficiently on notice as to the

possibility of fraud to discover its existence with the exercise of due diligence is a question of

fact.  See 37 Am Jur 2d § 408, pp. 554-55.  Moreover, as Judge Carman recognized in Ziegler

Bolt and Parts Co., "[t]he question of when a plaintiff discovered or reasonably should have

discovered a fraud is not one which often lends itself to resolution by way of summary

judgment."  19 CIT at 18 (citing RITA Organics, Inc., 487 F. Supp. at 78).

        Here, because the Government and defendants have submitted conflicting deposition

testimony concerning the March 24, 1993 telephone conversation, genuine issues of material fact

exist as to whether "discovery" occurred on that date or thereafter.  Thus, the trier of fact could

accept or reject defendants' version of the telephone conversation.  Even if defendants' version

of the telephone conversation is accepted, the trier of fact may or may not find that Customs was

sufficiently on notice of the possibility of fraud on March 24, 1993.  Furthermore, the trier of fact

may accept the Government's version of the telephone call and find that Customs was not on

notice of the possibility of fraud at that point in time, and therefore, the statute of limitations

would not have commenced to run until on or after March 29, 1993, the date of the meeting.

        It should be noted that defendants have demanded a trial by jury of all triable issues.

## <u>CONCLUSION</u>

This Court finds there are genuine issues of material fact as to when Customs

"discovered" the alleged fraud and when the statute of limitations under § 1621 began to run.

Therefore, because triable issues of fact remain, the cross-motions for summary judgment are

DENIED.[2]

SO ORDERED.

Dated: New York, New York

      September 27, 2000                                    _____

                                           James L. Watson, Senior Judge

---

[2] Inasmuch as at this stage of the litigation it is quite apparent to the court there are genuine issues of material fact for trial, defendants' motion for oral argument is denied. Also, in view of the denial of the cross-motions for summary judgment, defendants' motion to strike portions of the Government's Statement under CIT Rule 56(h) need not be reached and is denied.