865 F.2d 240
 10 ITRD 2169
 The ALGOMA STEEL CORPORATION, LIMITED, Plaintiffs-Appellants,
Christianson Pipe, Ltd., Ipsco, Inc. and Ipsco Steel, Inc., Plaintiffs,
v.
The UNITED STATES and U.S. International Trade Commission,
Defendants-Appellees,
Lone Star Steel Company, Maverick Tube Corporation, Sawhill
Tube Division and Cyclops Corporation, Defendants.
 No. 88-1491.
 United States Court of Appeals,
Federal Circuit.
 Jan. 4, 1989.
 
 William Silverman, Dow, Lohnes & Albertson, Washington, D.C., argued for plaintiffs-appellants. With him on the brief was Michael P. House. Rufus E. Jarman, Barnes, Richardson & Colburn, New York City, represented the plaintiffs.
 George Thompson, Office of the General Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued for defendant-appellee. With him on the brief were Lyn M. Schlitt, General Counsel and James A. Toupin, Asst. General Counsel. Michael H. Stein, Dewey, Ballantine, Bushby, Palmer & Wood, Washington, D.C., argued for defendants.
 Before MAYER, Circuit Judge, NICHOLS, Senior Circuit Judge, and MICHEL, Circuit Judge.
 NICHOLS, Senior Circuit Judge.
 
 
 1
 This is a proceeding under 28 U.S.C. Sec. 1295(a)(5) to review a decision of the United States Court of International Trade, 688 F.Supp. 639, 22 Cust.B. & Dec. 13 (1988), which affirms a determination of the International Trade Commission (ITC) which holds that the sales at less than fair value (LTFV or "dumping") of certain steel products, oil country tubular goods (OCTG) from Canada, injure or threaten injury to an industry in the United States. In the case of appellant Algoma Steel Corporation, a Canadian producer, the Department of Commerce had previously determined that, over a six-month period studied, such sales occurred, but it is undisputed that they were slightly under 50 percent of all United States sales Algoma made. Algoma had a printout made of the data establishing this, but the ITC refused to receive or consider it, holding that for purposes of its injury determination, sales at more than fair value (MTFV) were not to be excluded. The Court of International Trade rejected Algoma's assertion that this was legal error, as do we. That is the sole issue in the appeal, and our view of it requires that we affirm.
 
 
 2
 * In the intricate administrative machinery Congress has erected over the years for dumping and countervailing duty cases, one unique feature is the allocation of responsibility to two agencies otherwise independent of one another, the Commerce Department and the ITC, the requisite injury determination for the latter, and everything else for the former. Naturally the specifics as to who does what is for dispute and discussion. Commerce, determining that sales at LTFV have occurred, normally makes no finding as to what percentage of all sales they are, but rather and in lieu thereof, states a "dumping margin" which is a weighted average adjusting appropriately for the MTFV sales. The ITC says it is not told how many or which the MTFV sales were and the raw data that was before the Commerce Department is of no use to it because its injury determination covers a different time frame. This kind of issue should be one for the agencies to resolve between themselves, and not for the courts. We think we should confine our consideration to the ultimate product: is an injury determination, not confined to the LTFV sales alone, arbitrary, capricious, or otherwise contrary to the law? We hold it is not.
 
 
 3
 As Clausewitz, the sapient Prussian general, once wrote, "the object of war is peace." Likewise, the object of sales at LTFV is other sales at MTFV. Many such sales might be the best evidence possible that the LTFV sales had served their purpose and the United States competitor was in full retreat. It is, therefore, not at all obvious that the MTFV sales are per se legally irrelevant. They might be irrelevant as a practical matter in some instances, but that would have to be shown, and no such showing has even been attempted here. The whole issue is presented as one of per se legality or illegality.
 
 
 4
 The statute seems to us to speak in plain language and to be unambiguous. Section 731, 19 U.S.C. Sec. 1673 says:
 
 
 5
 If--
 
 
 6
 (1) the administering authority determines that a class or kind [emphasis supplied] of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and
 
 
 7
 (2) the Commission determines that--
 
 
 8
 (A) an industry in the United States--
 
 
 9
 (i) is materially injured, or
 
 
 10
 (ii) is threatened with material injury, or
 
 
 11
 (B) the establishment of an industry in the United States is materially retarded,
 
 
 12
 by reason of imports of that merchandise, or by reason of sales (or the likelihood of sales) of that merchandise for importation,
 
 
 13
 then there shall be imposed upon such merchandise an antidumping duty, * * *.
 
 
 14
 If a "class or kind" of that merchandise is sometimes sold at LTFV, the terms of any individual sale do not matter. Here Commerce told the ITC that a class or kind of goods, namely OCTG, was being so sold. It seems quite apparent that any one sale by the foreign producer, Algoma, or any other foreign producer, is one less for the domestic industry, and to that extent whether it is over or under fair value is immaterial but, of course legal injury, unlike economic, is a concept requiring some admixture of wrong doing. Some LTFV sales must be found, but if they occurred, the ITC is not required to pursue details as to the chain of causation of every instance where the foreign supplier supplanted the domestic one.
 
 
 15
 Appellant cites some legislative history and we have considered the citations, but the instances given probably do not stem from as careful consideration as does the statutory language itself, nor is it obvious the writers adverted to, and intended to discuss, instances of sales at LTFV and MTFV by the same foreign supplier in the same period of six months. On the other hand, appellee refers to its own administrative practice, unbroken since the enactment of the present law, as consistent with its position in this case. This would require more detailed consideration if the statutory language were not so plain but, at any rate, there is nothing there to undermine our position.
 
 
 16
 We have also considered the General Agreement on Tariffs and Trade (GATT). Congress no doubt meant to conform the statutory language to the GATT, but we are not persuaded it embodies any clear position contrary to ours. Should there be a conflict, the United States legislation must prevail. 19 U.S.C. Sec. 2504(a).
 
 
 17
 Thus, it is not arbitrary, capricious, or contrary to law for the ITC to refuse to consider a computer printout showing the breakdown of Algoma's sales during a six-month period between LTFV and MTFV sales. The period, incidentally, is one as to which entries will normally have been liquidated, so any assessment of dumping duties that ensues will not have any significant impact on the parties' businesses in that period.
 
 
 18
 This is not to say that a similar printout might not justify consideration if the raw data were supported by reasons specific to the particular case, why sales at MTFV were not relevant to the injury determination. It is only the appellant's per se rule that we reject. We are also of course not saying that the sales of the class or kind at MTFV and at LTFV are per se of equal probative value, so any distinction between them would be unwarranted however supported by the facts.
 
 II
 
 19
 Appellant seeks to discredit the opinion of the trial court by citation and discussion of a decision by Judge Newman of that court, Sprague Electric Co. v. United States, 488 F.Supp. 910, 84 Cust.Ct. 243 (1980), twice revisited by that Judge, 84 Cust.Ct. 260 (1980), and 529 F.Supp. 676, 2 CIT 302 (1981). This was a challenge by an American producer to a negative injury determination, the converse to the case we have here. One issue was the correctness of the ITC in that case having confined its consideration to sales at LTFV, excluding all others. Naturally, the American producer wanted all of them considered. Judge Newman, rejecting this point, seems to say the ITC would be guilty of legal error if it refused to exclude the LTFV sales. His result would perhaps be consistent with ours, as we are inclined to think there is no per se rule either way, but reluctantly we acknowledge his language does conflict with our view. We could stop with the obvious, that an appellate court is not bound by what a trial court says the law is, even in the same case, still less another one. The parties and the trial court, in this case, lay so much stress on their discussion of Sprague Electric, however, perhaps we should say more than the obvious.
 
 
 20
 In the first place, then, it is asserted the second and third Sprague Electric decisions overturned sub silentio the conclusion we have found stated in the first, since Judge Newman ended up affirming later determinations of the ITC that he could not but have known (it is said) were based on all the sales of the class or kind involved, not just the LTFV sales. When, however, it is as here a matter of stare decisis, not res judicata or collateral estoppel, any legal conclusion not expressed in words is of small precedential authority, if any.
 
 
 21
 In the second place, the Trade Agreements Act of 1979, which reenacted as 19 U.S.C. Sec. 1673 the 1921 provision originally codified as 19 U.S.C. Sec. 160, did so before the first Newman decision and therefore cannot possibly be presented as reenacting a provision which has received a judicial construction. The dates are wrong. The administrative constructions seem to have been conflicting.
 
 
 22
 In the third place, we do not think the decisions of the Customs Court are relegated to being, as precedents, decisions of a predecessor court to the Court of International Trade, in the same way decisions of the old Court of Claims and Court of Customs and Patent Appeals are to us. They are decisions of the same court. Judge Restani, in the decision under review, rightly calls the Customs Court "This court." It is nowhere spelled out in the Custom Courts Act of 1980, Pub.L. No. 96-417, but is implicit in section 703(a) that the status of individuals serving as Customs Court judges is not affected, and section 704 that actions pending under the old law shall continue to be processed.
 
 
 23
 However, among trial courts it is unusual for one judge to be bound by the decisions of another and, if it is to occur, such a rule should be stated somewhere. That is not done here; with all the criticism directed by appellants towards Judge Restani for not following Judge Newman, nowhere is anything pointed out saying she must. She, herself, accepts an analysis of Judge Newman's decisions as precedents which we deem in part mistaken, but she is right in making her own decision nevertheless.
 
 Conclusion
 
 24
 The decision of the Court of International Trade which is appealed from is affirmed.
 
 
 25
 AFFIRMED.