NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PAPIERFABRIK AUGUST KOEHLER AG AND KOEHLER AMERICA, INC.,**
*Plaintiffs-Appellants,*

**and**

**MITSUBISHI INTERNATIONAL CORPORATION, MITSUBISHI HITEC PAPER FLENSBURG GMBH, AND MITSUBISHI HITEC PAPER BIELEFELD GMBH,**
*Plaintiffs,*

**v.**

**UNITED STATES,**
*Defendant,*

**and**

**INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

**and**

**APPLETON PAPERS INC.,**
*Defendant-Appellee.*

---

2010-1147

---

Appeal from the United States Court of International Trade in Case No. 08-CV-0430, Judge Donald C. Pogue.

Decided: January 11, 2011

RICHARD P. FERRIN, Drinker Biddle & Reath LLP, of Washington, DC, argued for plaintiffs-appellant. With him on the brief was WILLIAM SILVERMAN.

MARK A. BERNSTEIN, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for defendant-appellee International Trade Commission. With him on the brief were James M. Lyons, General Counsel, and NEAL J. REYNOLDS, Assistant General Counsel.

JOSEPH W. DORN, King & Spalding LLP, of Washington, DC, argued for defendant-appellee Appleton Papers Inc. With him on the brief were ASHLEY C. PARRISH and STEVEN R. KEENER. Of counsel was GILBERT B. KAPLAN.

Before RADER, *Chief Judge*, LINN and MOORE, *Circuit Judges.*

PER CURIAM.

Papierfabrik August Koehler AG and Koehler America, Inc. (collectively "Koehler") appeal the Court of International Trade's review of the International Trade Commission's (the "Commission") determination that Koehler's dumping of Light Weight Thermal Paper ("LWTP") poses a threat of material injury to a domestic industry. Due to the unique circumstances in this case, this court *vacates* the judgment of the Court of International Trade and remands for further proceedings consistent with this opinion.

I.

Both Koehler and Appleton Papers Inc. ("Appleton") produce LWTP. LWTP is thin paper with a thermal active coating, a mixture of dye and developer, that changes color upon contact with heat. Printers with LWTP are often used at point-of-sale locations. LWTP products are classified by weight, measured in grams per square meter ("gsm"), and roll type, produced in jumbo or slit rolls.

Appleton filed a petition on behalf of the domestic LWTP industry with the Commission and United States Department of Commerce ("Commerce") alleging that imports of Koehler's LWTP from Germany (and other imports from China and Korea) were being sold at less than fair value ("LTFV") and causing injury, or threatening to cause injury, to the domestic LWTP industry. In response to Appleton's petition, the Commission and Commerce jointly commenced an investigation to determine whether the domestic LWTP industry was materially injured or threatened with material injury due to the allegedly dumped LWTP imports.

The Commission is statutorily required to make the final dumping determination. In relevant part, 19 U.S.C. § 1673d(b)(1) provides:

The Commission shall make a final determination of whether–

(A) an industry in the United States –

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded,

> by reason of imports, or sales (or the likelihood of sales) for importation, of *the merchandise with respect to which the administering authority has made an affirmative determination under subsection (a)(1) of this section.* If the Commission determines that imports of the subject merchandise are negligible, the investigation shall be terminated.

(emphasis added). The "administering authority" is the Secretary of Commerce, 19 U.S.C. § 1677(1). 19 U.S.C. § 1673d(a)(1) requires Commerce to make "a final determination of whether the subject merchandise is being, or likely to be, sold in the Untied States at less than its fair value [(is being dumped)]." This dumping margin determination appears as a weighted-average dumping margin of all products within the subject merchandise sold by a party.

When making a final determination, Commerce uses "the dumping margin or margins most recently published by [Commerce] prior to the closing of the Commission's administrative record." 19 U.S.C. § 1677(35)(C)(ii). However, when Commerce makes a positive dumping determination, they "shall [also] make available to the Commission all information upon which such determination was based and which the Commission considers relevant to its determination." 19 U.S.C. § 1673d(c)(1)(A).

In this investigation, Commerce defined the LWTP subject merchandise as "thermal paper with a basis weight of 70 [gsm] (with a tolerance of + 4.0 [gsm]) or less . . ." The Federal Register carried this determination on October 2, 2008. As printed in the Federal Register, Commerce found that imports of the subject merchandise from Koehler were being dumped at a margin of 6.50

percent. Commerce analyzed seven of Koehler's LWTP products, distinguished by weight.

Commerce also found that six of the seven Koehler products had positive dumping margins—meaning they are being sold at LTFV. As calculated by Commerce, and reflected in Commerce's intermediate calculations, the only Koehler product without a positive dumping margin was Koehler's 48 gsm LWTP product. The 48 gsm product constituted 38.15 percent of Kohler's quantity of sales in the United States and made up 40.28 percent of the value of sales in the United States.

Commerce often attempts to separate products from the subject merchandise; however, Koehler's 48 gsm LWTP allegedly was not physically distinct enough to become a separate class or kind for Commerce's determination of the subject merchandise.

The Commission's threat-of-injury investigation found that the bulk of LWTP sold in the United States was 48 gsm or 55 gsm. The Commission further found that U.S. shipments of the 55 gsm rolls from Koehler declined from 2005 to 2007, and that imports of the 48 gsm rolls, the product not sold at LTFV, were increasing. The Commission observed that the 48 gsm imports from Koehler were products "not consistently offered by the domestic industry, [but] by interim 2008 the domestic industry was increasingly selling 48 gram jumbo rolls."

Before publication of the Commission's final investigation, Koheler requested that the Commission disregard the increased shipments of 48 gsm jumbo rolls because they were the one product without a positive dumping margin. Citing this court's decision in *Algoma Steel Corp. v. United States*, 865 F.2d 240 (Fed. Cir. 1989), the Commission declined to disturb Commerce's dumping margin calculations by considering intermediate individual

product dumping margin calculations. Specifically, the Commission refused to examine any dumping margins of the 48 gsm rolls that were not published in the Federal Register.

The Commission published its final investigation determinations in November 2008. *Certain Lightweight Thermal Paper from China and Germany*, 73 Fed. Reg. 70,367 (Int'l Trade Comm'n Nov. 20, 2008) (final determ.). The Commission found, in a 3-3 split decision, that the domestic LWTP paper industry was "threatened with material injury by reason of subject imports from Germany." The Commission's determination was almost entirely based on the impact 48 gsm German jumbo rolls will have on the domestic market.

The Commission determined that increased imports of 48 gsm jumbo rolls from Germany threatened the domestic LWTP industry with material injury even though those rolls were not being sold at LTFV. In their final investigation, the Commission predicted that "[w]hile most of the subject imports from Germany during the period of investigation were 55 [gsm] jumbo rolls . . . imports entering in the imminent future will be heavily concentrated in the 48 [gsm] product. . . . [and the 48 gsm rolls] will have far greater significance in the imminent future." Among other effects, the Commission predicted that "48 gram product will restrict the ability of domestic producers to adjust prices of 55 gram products commensurately with costs." The Commission concluded that the only threat of material injury came from the 48 gsm rolls that were not being sold at LTFV.

The Court of International Trade affirmed the Commission's determination; Koehler timely appealed to this court. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

II.

This court reviews the Court of International Trade's decision without deference, and reviews the Commission's decision for factual determinations "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 156a(b)(1)(B)(i); *see also Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1369 (Fed. Cir. 2002). This court reviews the Commission's legal conclusions without deference. *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1356 (Fed. Cir. 1996).

The Commission cannot change Commerce's determination that, on average, all of Koehler's exports within the subject merchandise is being dumped at a rate of 6.50 percent. *See* 19 U.S.C. § 1677(35)(C)(ii). However, the Commission can examine the intermediate calculations relied upon by Commerce. *See* 19 U.S.C. § 1673d(c)(1)(A). As such, the Commission is not prohibited from using and considering intermediate calculations, provided by Commerce, when making an injury determination.

Moreover the Commission may also consider subsets of the subject merchandise. *See Cleo Inc. v. United States*, 501 F.3d 1291, 1295 (Fed. Cir. 2007) (citing 19 U.S.C. §§ 1673, 1677(4)(A), and 1677(10) as support for the Commission's authority to determine which parts of the subject merchandise are relevant for the industries in the injury determination). Accordingly, Commerce's designation of the class or kind of merchandise sold at LTFV does not necessarily control the group of products used by the Commission in its material injury analysis. *Id.* (citing *Hosiden Corp. v. Advanced Display Mfrs. of Am.,* 85 F.3d 1561, 1568 (Fed. Cir. 1996)). Indeed, the Commission, and not Commerce, determines whether all articles in the subject merchandise are "like products," which in turn

make up an "industry" for the purposes of a dumping determination. *Cleo*, 501 F.3d at 1295.

The Commission's six-element "like product" test supports the Commission's ability to examine the price of subsets of the subject merchandise. Indeed, one of the six elements of the Commission's "like product" determination is price. *Id.* (citing *Torrington Co. v. United States*, 938 F.2d 1278, 1280 (Fed. Cir. 1991)). This like-product determination demonstrates the Commission's ability to manipulate and subjectively evaluate parts of Commerce's dumping margin determination, including evaluating the underlying prices products are sold at, without changing the dumping margin calculation used.

Koehler asked the Commission to take into account sale prices for the 48 gsm products, in the form of intermediate dumping margin calculations. Koehler used this court's opinion in *Algoma Steel Corp. v. United States*, 865 F.2d 240 (Fed. Cir. 1989) to support its request. The Commission's refusal to consider intermediate 48 gsm dumping margin calculations was premised on a divergent reading of *Algoma,* and a misunderstanding of Koehler's request.

The Commission must use the dumping margins calculated by Commerce. 19 U.S.C. § 1673d(b)(1). However, *Algoma* specifically allows for consideration of raw data in computer print outs "by reasons specific to the particular case, why sales at MTFV were not relevant to the injury determination." *Algoma*, 865 F.2d at 242. Koehler's situation is one of those "particular cases." *Id.*

Several important factors lead to this conclusion. First, Koehler has not asked the Commission to change any dumping margin calculations made by Commerce. Instead, Koehler asks the Commission to make decisions based on the price, measured as a dumping margin, of a

subset of dumped goods. Second, Koehler asks the Commission to analyze data that is statutorily required to be available to the Commission. *See* 19 U.S.C. § 1673(d)(c)(1)(A). Thoughtful consideration of this data, in the context of the injury determination by the Commission, has no effect on the dumping margin calculations published by Commerce. Instead, it allows the Commission to take those calculations and apply its expertise to make a fair and equitable injury determination. When the threat determination is based almost exclusively on one product within the subject merchandise, and that one product is not being sold at LTFV, the Commission should be able to use all materials at its disposal to make an equitable determination. The Commission incorrectly denied Koehler's request, and incorrectly interpreted this court's holding in *Algoma*, when refusing to consider potentially dispositive intermediate data. To that end, the Court of International Trade erred in affirming the Commissions decision.

Accordingly, this court vacates the judgment of the Court of International Trade and remands with instructions to remand this case to the Commission for reconsideration.

**VACATED AND REMANDED**

COSTS

No costs.