# United States Court of Appeals for the Federal Circuit

---

**PAPIERFABRIK AUGUST KOEHLER AG
AND KOEHLER AMERICA, INC.,**
*Plaintiffs-Appellants,*

**AND**

**MITSUBISHI INTERNATIONAL CORPORATION,
MITSUBISHI HITEC PAPER FLENSBURG GMBH,
AND MITSUBISHI HITEC PAPER BIELEFELD
GMBH,**
*Plaintiffs,*

**v.**

**UNITED STATES,**
*Defendant,*

**AND**

**INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

**AND**

**APPLETON PAPERS INC.,**
*Defendant-Appellee.*

---

2010-1147

---

Appeal from the United States Court of International Trade in case no. 08-CV-0430, Judge Donald C. Pogue.

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

_____

MARK A. BERNSTEIN, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, filed a combined petition for panel rehearing and rehearing en banc for defendant-appellee International Trade Commission. With him on the petition were JAMES M. LYONS, General Counsel, and NEAL J. REYNOLDS, Assistant General Counsel for Litigation.

RICHARD P. FERRIN, Drinker Biddle & Reath LLP, of Washington, DC. filed a response to the petition for plaintiffs-appellants. With him on the response was WILLIAM SILVERMAN.

JOSEPH W. DORN, King & Spalding LLP, of Washington, DC, filed a response to the petition for defendant-appellee Appleton Papers Inc. With him on the response were ASHLEY C. PARRISH and STEVEN R. KEENER.

_____

Before RADER, _Chief Judge_, NEWMAN, LOURIE, BRYSON, GAJARSA, LINN, DYK, PROST, MOORE, O'MALLEY, and REYNA, _Circuit Judges_.

PER CURIAM.

REYNA, _Circuit Judge_, with whom NEWMAN and O'MALLEY, _Circuit Judges_, join, dissents from the denial of the petition for rehearing en banc.

## O R D E R

A combined petition for panel rehearing and rehearing en banc was filed by Defendant-Appellee, International Trade Commission, and a response thereto was

invited by the court and filed by Plaintiffs-Appellants and Defendant-Appellee, Appleton Papers, Inc.

The petition for panel rehearing was considered by the panel that heard the appeal, and thereafter the petition for rehearing en banc and responses were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of Defendant-Appellee for panel rehearing is denied.

(2) The petition of Defendant-Appellee for rehearing en banc is denied.

(3) The mandate of the court will issue on May 26, 2011.

FOR THE COURT

May 19, 2011                        /s/ Jan Horbaly
    Date                            Jan Horbaly
                                    Clerk

# United States Court of Appeals for the Federal Circuit

---

**PAPIERFABRIK AUGUST KOEHLER AG AND KOEHLER AMERICA, INC.,**
*Plaintiffs-Appellants,*

AND

**MITSUBISHI INTERNATIONAL CORPORATION, MITSUBISHI HITEC PAPER FLENSBURG GMBH, AND MITSUBISHI HITEC PAPER BIELEFELD GMBH**,
*Plaintiffs,*

v.

**UNITED STATES,**
*Defendant,*

AND

**INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

AND

**APPLETON PAPERS, INC.**
*Defendant-Appellee,*

---

2010-1147

---

Appeal from the United States Court of International Trade in Case No. 08-CV-0430, Judge Donald C. Pogue.

REYNA, *Circuit Judge*, with whom NEWMAN and O'MALLEY, *Circuit Judges*, join, dissenting from denial of the petition for rehearing en banc.

––––––––––––––––

I respectfully dissent from the court's denial of Appellee's Petition for Rehearing En Banc. The panel's opinion is a remarkable departure from binding precedent and applicable law. It reflects confusion about the statutory roles of the Department of Commerce ("Commerce") and the U.S. International Trade Commission ("Commission") in antidumping duty investigations, and it directs the Commission to take action that is contrary to its established, long-standing agency practice.

I.   Review of Case

Light weight thermal paper ("LWTP") is a thin paper with a thermal active coating, a mixture of dye and developer, that changes color upon contact with heat. LWTP products are classified by weight, measured in grams per square meter, and roll type, produced in either jumbo or slit rolls.

In the underlying antidumping duty investigation, Commerce established a single class or kind of merchandise that included 48 gram LWTP. Although the parties were afforded an opportunity to contest Commerce's class or kind determination, Koehler did not do so. *See Lightweight Thermal Paper from Germany: Notice of Final Determination of Sales at Less Than Fair Value*, 73 Fed. Reg. 57,327-28 (Oct. 2, 2008). Hence, when Commerce published its final antidumping duty margins, it set out a single dumping rate applicable to all products that constituted the single class or kind merchandise, including the 48 gram LWTP. *Id.* at 57,328.

Prior to the Commission making its final injury determination, Koehler requested that the Commission review certain computer printouts of intermediate anti-dumping duty calculations for the 48 gram LWTP product. Koehler requested that the Commission use the intermediate dumping margins, or a variation thereof, in place of the pricing data the Commission had developed for the 48 gram LWTP product. The Commission denied the request.

Koehler appealed the Commission's denial to the Court of International Trade. The Court of International Trade affirmed the Commission. *Papierfabrik August Koehler AG v. United States*, 675 F. Supp. 2d 1172, 1191-92 (Ct. Int'l Trade 2009). Koehler appealed to this court, and upon briefs and oral argument, a panel of this court vacated and remanded the decision of the Court of International Trade. *Papierfabrik August Koehler AG v. United States*, No. 2010-1147, 2011 WL 96814, at *4 (Fed. Cir. Jan. 11, 2011) ("Panel Op.").

The Commission petitioned for rehearing, which was denied by the panel. The Commission also petitioned for en banc rehearing of the panel's opinion, which also was denied by the court. I dissent from the denial of en banc review.

II. Standard of Review

The panel addressed a single issue: whether the Commission erred when it refused Koehler's request that it take into account sales prices for sales of 48 gram LWTP in the form of Commerce's intermediate dumping margin calculations. Panel Op. at *1.

This court reviews de novo the decisions of the Court of International Trade. *U.S. Steel Corp. v. United States,* 621 F.3d 1351, 1357 (Fed. Cir. 2010). Like the Court of

International Trade, we review the Commission's findings of fact for substantial evidence and its conclusions of law *de novo*. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1559 n. 10 (Fed. Cir. 1984); *see also* 19 U.S.C. § 1516a(b)(1)(B) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The question in this case is not whether we agree with the Commission's decision, nor whether we would have reached the same result as the Commission had the matter come before us for decision in the first instance. Congress charged the Commission with the task of making these complex determinations. This court reviews those decisions for reasonableness. *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996). Considerable weight should be accorded to the Commission's construction of a statutory scheme it is entrusted to administer. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). The principle of administrative deference has been consistently followed whenever a decision as to the meaning or reach of a statute involves reconciling conflicting policies or depends upon more than ordinary knowledge respecting the matters subjected to agency regulations. *See Thai I-Met Frozen Foods Co. v. United States*, 616 F.3d 1300, 1305 (Fed. Cir. 2010) (citing *Chevron*, 467 U.S. at 844).

III. The Panel's Confused Approach

The panel's opinion reflects confusion about the distinct roles of Commerce and the Commission in antidumping duty investigations. The respective roles of both

agencies are clearly set out in the antidumping statute.[1] In pertinent part, this statute provides that an antidumping duty order shall be imposed with respect to imports of a *class or kind* of merchandise and that the Commission is required to make its final injury determination on the basis of imports or sales "of the merchandise with respect to which the administrating authority has made an affirmative determination" of sales at less-than-fair-value. 19 U.S.C. § 1673(b)(1) (1994). Put simply, Commerce investigates dumping, the Commission investigates injury, but the Commission's final determination must be based on the class or kind of merchandize reported by Commerce as sold at less than fair value. *See id.* § 1673.

---

[1]     19 U.S.C. 1673 (1994) provides that:

If—
**(1)** the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and
**(2)** the Commission determines that—
**(A)** an industry in the United States—
**(i)** is materially injured, or
**(ii)** is threatened with material injury, or
**(B)** the establishment of an industry in the United States is materially retarded,
by reason of imports of that merchandise or by reason of sales (or the likelihood of sales) of that merchandise for importation,

then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise. For purposes of this section and section 1673d (b)(1) of this title, a reference to the sale of foreign merchandise includes the entering into of any leasing arrangement regarding the merchandise that is equivalent to the sale of the merchandise.

The panel improperly mixes the distinct statutory roles of Commerce and the Commission by requiring that the Commission ignore Commerce's class or kind determination. The statute does not provide that the Commission may disassemble Commerce's class or kind determination to select which products it will use in rendering its final determination. Yet, that precisely is what the panel has ordered the Commission to do.

IV. Departure from Precedent

The panel primarily relies on a single authority to support its holding that the Commission "must" use the dumping margins calculated by Commerce, *Algoma Steel Corp. v. United States*, 865 F.2d 240, 241 (Fed. Cir. 1989). *See* Panel Op. at *3-4.

The panel misapplies *Algoma* to this case. In *Algoma*, counsel for Algoma procured computer printouts that were purported to show that a high percentage of a product under investigation was sold at more-than-fair-value. *Algoma*, 865 F.2d at 241. The Commission refused Algoma's request to consider these printouts in its injury determination. *Id*. at 242. This court affirmed the Commission's refusal. The court noted that there may be special circumstances when the Commission may decide to use such data, but no such circumstances were present in the case. *Id*. at 243.

The panel apparently accepted Koehler's proposition that this case is unique and presents special circumstances that were lacking in *Algoma*. *See* Panel Op. at *3-4. This belief, however, is not supported by the record or applicable law. While the record indicates that the Commission did not review the computer sheets in the context of its final injury determination, the panel failed to review whether the Commission's decision not to use the printouts was reasonable. Contrary to the applicable standard

of review, the panel steps into the Commission's shoes and asserts its own wisdom as to what it would have done in this case. *See* Panel Op. at *4; *Chevron,* 467 U.S. at 844. On that basis alone, the opinion should be vacated.

The panel further mischaracterizes the roles of Commerce and the Commission in antidumping duty investigations. The panel states that the Commission and Commerce "jointly commenced an investigation to determine whether the domestic LWTP industry was materially injured or threatened with material injury." Panel Op. at *1. This is incorrect. Under the statute, Commerce is not involved in the injury determination. 19 U.S.C. § 1677(35)(C)(ii) (1996). The panel notes that the Commission "is statutorily required to make the final dumping determination." Panel Op. at *1. This is incorrect. The Commission is statutorily charged only to conduct an injury determination. Citing § 1677(35)(C)(ii), the panel states that "[w]hen making a final determination *Commerce* uses 'the dumping margin or margins most recently published by [Commerce] prior to the closing of the Commission's administrative record.'" Panel Op. at *1 (emphasis added). This is incorrect. The statute cited by the panel provides that the Commission, not Commerce, uses Commerce's published dumping margins to make an injury determination. The panel notes that the Commission's like product determination demonstrates the Commission's "ability to manipulate and subjectively evaluate parts of Commerce's dumping margin determination, including evaluating the underlying prices products are sold at, without changing the dumping margin calculation used." Panel Op. at *3. This is incorrect. The Commission's like product determination bears no such relation to Commerce's dumping margins and the statute does not provide a door through which the Commission may manipulate or subjectively

evaluate Commerce's dumping margins for purposes of making its injury determination. *See* 19 U.S.C. § 1673a(c)(4) (1996). The panel's decision should be vacated to correct the misstatements of law.

## V. Absurd Results

The panel vacated the decision of the Court of International Trade and remanded to that court with instructions that it remand to the Commission for reconsideration. Panel Op. at *4. The panel, however, did not provide instructions on what the Commission is supposed to do on remand. The panel's opinion hints at several scenarios. Given its reliance on *Algoma*, the panel seems to order the Commission to exclude consideration of 48 gram LWTP from its injury analysis if it finds that sales of 48 gram LWTP were made at more-than-fair-value, an action that would terminate the investigation and cause the withdrawal of the antidumping duty order. *See* Panel Op. at *4. The panel also references the Commission's ability to "manipulate" the dumping margins to arrive at pricing data different from the pricing data it received in questionnaire responses submitted during the investigation. *See* Panel Op. at *3-4.

Read broadly, the panel's opinion will have a profound and troubling effect on how antidumping duty investigations are conducted. The Commission argued before the panel that any requirement that it must consider intermediate dumping margins in making its final injury determination would represent a departure of over 20 years of agency practice. Br. for Defendant-Appellee at 42-43. This court has held that long-standing agency practice should be respected. *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994); *see also Entergy Corp. v. Riverkeeper*, 129 S. Ct. 1498, 1505 (2009) (agency interpretation governs even if it is not the one

courts deem "most reasonable").  The Commission's long-standing practice should not be disturbed by the mere wave of a judicial hand.

The opinion opens the doors for mischief in trade cases and will likely result in outcomes prohibited by statute.  Commerce's class or kind determinations are often fiercely litigated by the parties in antidumping cases, particularly as the make-up of class or kind can have a direct effect on the magnitude and reach of dumping orders as well as the exclusion or inclusion of products and companies in an investigation.  In this case, there is no evidence on record that Koehler contested Commerce's inclusion of 48 gram LWTP in the class or kind of merchandise subject to the investigation.  *See* 73 Fed. Reg. 192 at 57,327-28.  I find this factor compelling.  Litigants often seek to include a product that is heavy in more-than-fair-value sales in Commerce's determination of class or kind merchandise because this may result in lower overall weighted average dumping margins.  Here, Koehler was satisfied with Commerce's class or kind determination, but once privy to the preliminary results, Koehler proffered printouts of the intermediate dumping calculations that showed sales of 48 gram product at more-than-fair-value and cried foul before the Commission.  Notably, the counsel that argued before the panel in this case apparently represented Algoma over twenty years ago.  What failed to work in *Algoma* twenty years ago unfortunately works today.

Reliance on intermediate data has its inherent pitfalls.  Subsequent to the panel's opinion, Commerce published its final determination in the first administrative review on LWTP which shows that Koehler used an illegitimate monthly post-sale rebate program that lowered its home market price.  Once Commerce disallowed the rebate, the incidence of dumping increased.  *Light-*

*weight Thermal Paper from Germany: Notice of Final Results of the First Antidumping Duty Administrative Review*, 76 Fed. Reg. 22,078, 22,079 (Apr. 20, 2011); *see also* Memorandum from Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, Final Results of the First Administrative Review of the Antidumping Duty Order on Lightweight Thermal Paper from Germany (Apr. 13, 2011), *available at* http://ia.ita.doc.gov/frn/summary/GERMANY/2011-9574-1.pdf. This development undercuts arguments Koehler made to the panel that the administrative review would show that it was not dumping 48 gram LWTP during the review period, arguments apparently intended to bolster its claim that all sales of the 48 gram LWTP product during the period of investigation were at more-than-fair-value. Oral Argument at 10:03, *Papierfabrik August Koehler AG, v. United States*, 2011 WL 96814 (No. 2010-1147), *available at* http://oralarguments.cafc.uscourts.gov/Audiomp3/2010-1147.mp3. The information renders the intermediate dumping calculations suspect and casts doubt on their validity and utility in a new injury determination. The information further challenges the panel's stated reasons as to why it believes this case is unique, that 48 gram LWTP was not dumped. On this basis alone, the court should have granted en banc review and reversed the opinion of the panel.

In an opinion labeled as non-precedential, the panel departs from its own long-standing precedent and ignores applicable Supreme Court precedent. It has forced the Commission to take steps that will likely land it in a quicksand of statutory prohibitions. Whether precedential or non-precedential, this court's opinions must be grounded in law. The panel's opinion in this case was not, and for those reasons I respectfully dissent.